The opinion of the Court was afterwards delivered as follow's by
Parsons, C. J.
The first objection made by the defendants is founded on a want of a demand of payment on the promisor when the note was payable. As to this objection, the facts are, that, on the first day of grace, which was the last day of February, notice *53 was left at the lodgings of the promisor, that the note would be due on the last day of grace, with a request to pay it then; but it also appears that before that time it was known to the parties, that he had absconded, and, when the note was payable, he was not to be found. The condition on which an endorser of a note is holden, is, that the endorsee shall present the note to the promisor when due, and demand payment of it, if it can be done by using due dill gence. (a) Now, it appears that when the note in this case was due, it could not be presented to the promisor for payment, and that there was no neglect in the endorsers. We are all, therefore, satisfied that the endorsers are holden on their endorsement in this case, notwithstanding there was no demand on the promisor.
The second objection is, that the defendants did not, in construction of law, endorse this note.
On the facts in this case we are to decide who shall suffer the loss of the money, — the plaintiffs, who, it is agreed, are innocent endorsees, or the defendants.
It is objected that this note ought to be considered as a forgery of the names of the endorsers; because a note was afterwards written on the face of the paper by the promisor, not only without the direction or consent of the defendants, but against their express instruction ; and therefore that it was a false and fraudulent alteration of a writing, to the prejudice of the endorsers.
This objection would have great weight, if, when the endor sers put the name of the firm on the paper, they had * not intended that something should afterwards be writ- [ * 54 ] ten, to which the name should apply as an endorsement; for then the paper would have been delivered over unaccompanied by any trust or confidence. If the clerk had fraudulently, and for his own benefit, made use of all the endorsements for making promissory notes to charge the endorsers, we are of opinion that this use, though a gross fraud, would not be in law a forgery, but a breach of trust. And for the same reason, when one of these endorsements was delivered by the clerk, who had the custody of them, to the promisor, who by false pretences had obtained it, the fraudulent use of it would not be a forgery; because it was delivered with the intention that a note should be written on the face of the paper by the promisor, for the purpose of negotiating it as *54 endorsed in blank by the house. And we must consider a delivery oy the clerk, who was intrusted with a power of using these endorsements, (although his discretion was confined,) as a delivery by one of the house; whether he was deceived, as in the present case, or had voluntarily exceeded his direction. For the limitation imposed on his discretion was not known to any but to himself and to his principals.
It is further objected that, if the writing of this note under these circumstances is not a forgery, yet it is such a fraud as will discharge the endorsers against an innocent endorsee. The counsel for the defendants agree that generally an endorsement obtained by fraud shall hold the endorsers according to the terms of it; but they make a distinction between the cases where the endorser, through fraudulent pretences, has been induced to endorse the note he is called on to pay, and where he never intended to endorse a note of that description, but a different note, and for a different purpose.
Perhaps there may be cases in which this distinction ought to prevail; as if a blind man had a note falsely and fraudulently read to him, and he endorsed it, supposing it to be the note read to him. But we are satisfied that an endorser cannot avail himself of this distinction, but in cases where he is not chargeable with any loches or neglect, or misplaced confidence in others. Here one [ * 55 ] of two innocent * parties must suffer. The endorsees confided in the signature of the defendants, and they could have no reason to suppose that it had been improperly obtained The note was openly offered to the plaintiffs by a broker, and when they objected on account of the absence of both the endorsers, they were answered, on the information of the promisor, whose character then stood fair, that blank endorsements had been left with the clerk, and that the endorsers had before endorsed a number of notes for the same person, which had been negotiated by a broker. On the other hand, the loss has been occasioned by the misplaced confide nee of the endorsers in a clerk too young or too inexperienced to guard against the arts of the promisor. It is to be regretted that the blank endorsements had not been deposited with the brother of the partners, who was directed to be consulted as to the use of them ; for then no innocent person would have been a sufferer.
From a view of all the facts, as they are presented to us, it is our opinion that the endorsers must be holden, and that judgment must be entered according to the verdict, with the additional interest agreed.
In forming this opinion, we have been necessarily led to consider the effect of a different opinion on the commercial part of the com munity. How far it is common for merchants to intrust their clerk *55 with blank signatures or endorsements, is not known. But when merchants are in the habit of endorsing for each other at the banks, it is very common to put their names on blank paper, and deliver them to the party to be accommodated, for the express purpose of obtaining a renewal of certain notes, when they become due. And if the party having these signatures should employ them as names to other negotiable securities not contemplated, and the signatures should for that reason be void, much injury might result to innocent endorsers, or the bank discounts would be greatly embarrassed.

 [No demand on the maker is necessary, in order to charge the endorser, when, after the making of the note, and at the time when it becomes due, the maker is residing out of the state or government where it was made. McGruder vs. The Bank of Washington, 9 Wheat. 598. — Gist vs. Lybrand, 3 Ohio Rep. 319. — Cromwell vs Hynson, 2 Esp. N. P. 511. — Cummings vs. Fisher, Anth. N. P. 5. — Anderson vs Drake, 14 Johns. 117. — Ed.]