Cowen, J.
As the notes in question were received by the plaintiffs in exchange for the notes of Fowler, Gordon & Co., the former are entitled, so far as their rights are in question on this writ of error, to be considered bona fide holders in the fair course of trade and for a valuable consideration.
That the power conferred by the letter of attorney was limited to notes in the proper business of the testator, and that it *266 would have been so independently of the words to his use, there can be no doubt. (Stainer v. Tysen, post, p. 279 ; Nichol v. Green, Peck’s Rep. 283 ; Butcher v. Tysen, U. S. Circ. Court, Nov. 1840, 4 Hunt’s Merch. Mag. 456.) To fulfil this purpose of the power, it -was essential that the making and endorsing should be upon a consideration passing to Pexcel Fowler, the testator. There is nothing in the nature or effect of such a power which authorizes the attorney to use it for his own benefit or the benefit of any one excepting the principal. And if this limitation be such that an appointee would be bound to notice the fact that the attorney overstepped it, then these plaintiffs were properly cut off by the court below from their claim upon the contested notes and endorsements.
The general rule, that when an attorney does any act beyond the scope of his power, it is void even as between the appointee and the principal, has always prevailed, and is indeed elementary in the doctrine of powers. The ground on which the rule rests is familiar. The appointee need not deal with the attorney unless he choose ; and it is very reasonable that he should be bound to inspect the powder, when in writing, or to learn its language in the best way he can, when it is by parol. On becoming acquainted with it, he shall be holden to understand its legal effect, and must see, at his peril, that the attorney does not transgress the prescribed boundary in acting under it. I say in acting under it; for it is easy to compare the act with the words to which it must conform ; and so far, there is nothing unreasonable—nothing impossible or even difficult. In speaking of the attorney’s acts, I certainly mean to include his declarations made at the time, or in the business which he transacts under the power ; for his declarations are a part of the res gestae, and bind his principal equally with the act to which they relate. They are always received as evidence against the principal. I authorize a man to borrow a sum of money for me. The power being limited, he has no"authority to borrow for himself or his neighbor. He goes to the lender *267 and borrows in my name, showing him my written power, and declaring at the same time that he takes the loan on my account. Both his acts and declarations are evidence against me.
A question often arises upon this and the like cases, how far the appointee is responsible for the agent’s fidelity. Take it, in the instance supposed, that his acts and professions make out a case within the terms of his authority; is the man who advances his money accountable for the truth or the good faith of a transaction which, so far as he can see and has reason to believe at the time, is in honest conformity with such authority 1 Take it that the attorney comes with a falsehood, meaning the loan for his own use, or the use of another whom he desires to accommodate ; must the appointee lose his money 1 He brings his action against the principal, and proves the letter of attorney and the loan as stated; is it necessary to do more 1 or can the principal turn round upon him and show that his attorney was false to his interest, and so infer that the man who trusted to his letter and made a loan apparently according to its purview, must himself be visited with the consequences of the fraud ? I confess that, until I heard the argument in this cause, I had supposed the mere statement of such a case furnished its own answer; and that to allow such a defence, would be pushing the duty of enquiry on the part of the appointee far beyond the principle on which it is founded— indeed to an extent absolutely impracticable.
The case I have instanced is, in principle, the one now before us. The plaintiffs were apprised that Jacob D. Fowler had power to make and endorse notes in the business of the testator; and notes actually made and endorsed by the attorney, and purporting to have been so made and endorsed in conformity with the power, were presented to and, in effect, discounted by the plaintiffs. This act was equivalent to an express declaration that the notes were made and endorsed in the business of the testator. A man gives a power to sell land, and the attorney executes a deed in the name of the principal. *268 The transaction imports the same thing as a recital or express declaration referring to the power; and the principal is equal- \ ly estopped to deny that the authority has been pursued. v There are a few general principles entirely settled and universally acted upon, especially in dealing with negotiable paper, which it may be well to remember. One was laid down in Hern v. Nichols, (1 Salk. 289.) The defendant’s factor being authorized to sell silk, defrauded the vendee; and Holt, Ch. J. held, that the principal was liable for the deceit; “ for,” said he, “ seeing somebody must be a loser by this deceit, it is more reason that he that employs and puts a trust and confidence in the deceiver, should be a loser, than a stranger.” (See also Bowles v. Stewart, 1 Sch. & Lef. 222 ; The Monte Allegre, 9 Wheat. 644.) An application of this principle to men who had authorized an agent to endorse for them, was made in Putnam v. Sullivan, (4 Mass. Rep. 45 ;) a case coming very near if not quite up to the one before us. The defendants, who were merchants, having occasion to be absent, left their names with a clerk on blank paper, to be filled up by him and advanced on the sale of goods by the house upon commission, or to renew the notes of the house when due at the banks. On some he was authorized to bind them as makers, and on others as endorsers. Aman obtained one of the latter from the clerk by false pretences, wrote and signed a note on the other side, and got money upon it for his own use on the credit of the endorsement, the lenders having no notice of the fraud. The defendants were held liable. The plaintiffs were informed too that it was a blank endorsement which had been left with the clerk, to be used in the business of the defendants. Parsons, Ch. J. said : “ Here one of two innocent parties must suffer. The endorsees confided in the signature of the defendants; and they could have no reason to suppose that it had been improperly obtained. On the other hand, the loss has been occasioned by the misplaced confidence of the endorsers in a clerk too young or inexperienced to guard against the arts of the promissor.” Looking at the fact that *269 the plaintiffs knew the clerk was limited to use the note in the business of his principals, the power was the same in respect to them, as that of Jacob D. Fowler here in respect to the bank. They found, as the bank did, that the agent had delivered out the note to the promissor, but not that he had exceeded his power, though he had done so in fact. Why not require them to stop and ascertain whether it had been delivered out upon a consideration passing to the defendants 1 The answer is, that they had put their agent in a condition which enabled him to impose upon strangers by apparently pursuing his authority. They had given him a discretion to speak for them, both by words and actions. The neglect or falsehood of their agent, therefore, was legally imputable to them. The paper being issued without consideration, whether by their agent or themselves, was indeed void as between the original parties; but there being in each case a power to issue paper valid in form, it could not be impeached in the hands of a Iona fide holder. Every body knows that a partner who issues a note of the firm for his own benefit, exceeds his power; but the firm cannot avail themselves of the objection as against a Iona fide holder. Another case is that of Prescott v. Flynn, (reported in Chitty on Bills, 35, note, Am. ed. of 1839.) In that case it was proved by circumstances that the clerk of the defendants was authorized to endorse for them in their business. Availing himself of that authority, he endorsed their names on two bills of exchange which he procured to be discounted for his own benefit, and absconded with the money. It was hardly pretended that the plaintiff was bound, though he knew of the limitation, to enquire whether in truth the money was intended for the principals. Indeed, when the case came to be reported in 9 Bing. 19, the reporter thought the fraud to be so entirely immaterial that he did not even mention it. According to both reports, the court took it for granted that the agent acting for himself, instead of his principals, could make no difference as between them and the plaintiff. It was enough that he had power to act in the defendants’ business, and did apparently so *270 act. In Newland v. Oakley, (6 Yerg. 489,) an attorney having power to assign notes for his principal, dicl so ; but embezzled the money which he got. That he thus assigned for his own benefit, was held not to affect the right of a person to whom one of the notes came in the course of trade.
These cases respecting the limited powers of agents to make endorsements, accord with the proposition concerning powers in general as it was submitted to us by the counsel for the plaintiff in error ; viz : “ Whenever the very act of the agent is authorized by the terms of the power, that is, whenever by comparing the act done by the agent with the words of the power, the act is in itself warranted by the terms used, such act is binding on the constituent as to all persons dealing in good faith with the agent. Such persons are not bound to enquire into facts aliunde. The apparent authority is the real authority.” Such a rule was substantially laid down by Lord Ellenborough, Ch. J. in Pickering v. Busk, (15 East, 38,43.) He says: “ I cannot subscribe to the doctrine that a broker’s engagements are necessarily and in all cases limited to his actual authority, the reality of which is afterwards tole tried ly the fact. It is clear that he may bind his principal within the limits of the authority with which he has been apparently clothed by the principal in respect to the subject matter; and there would be no safety in mercantile transactions, if he could not.” (Andrews v. Kneeland, 6 Cowen, 354, 357,358, and the looks there cited ; Rossiter v. Rossiter, 8 Wend. 498, 499, and the cases there cited.)
How were the plaintiffs in the case before us to ascertain whether Jacob D. Fowler had acted in good faith towards his principal 1 On their agent asking one of the payees, Samuel D. Rogers, of the firm of David Rogers & Son, he answers that the notes were business paper, given for goods sold ; and this is another circumstance tending to perfect the parallel with Putnam v. Sullivan.
/ " The only adjudged case cited on the argument for the defendants in error, giving color to the idea that the appointee *271 must look behind the power, is Atwood v. Munnings, (1 Mann. & Ryl. 66 ; 7 Barn, if Cress. 42, S. C.) The power in that case was extremely limited, being tied up to the acceptance of bills particularly described. The words were : “ For me, and on my behalf, to pay and accept such bill or bills &c., as shall be drawn &e. on me by my agents or correspondents, as occasion shall require.” The bill there in question was drawn by Burleigh, a partner of the defendant, for the benefit of the joint concern ; and, as the court held, he was neither a correspondént nor agent within the meaning of the power. There was indeed no need of giving effect to the bill by an acceptance under the power; for Burleigh was authorized to bind the defendant as his partner. The court held that, as the power described the persons whose names must appear upon the bill, the authority was overstepped if the names were not there. In other words, a power to accept a bill drawn by an agent, did not extend to a bill drawn by one who was not an agent. Here the power contains no such limitation. The case cited accords with one of the most familiar rules for the construction of powers; but it does not apply. If the principal will describe the particular condition on which a bill shall be accepted, however idle, even to the ■writing of it with a steel pen, it must be fulfilled. There it was to be drawn by a correspondent or agent; and not being so drawn, but by one who was a principal, the condition failed. The appointee was admonished to see at his peril that all the prescribed requisites were combined. The principal would not trust the attorney, even to judge of the parties. There was another clause in the power which, as Bayley, J. inclined to think, also amounted to a condition. The bills were to be drawn as occasion should require. It was not necessary to say that the plaintiff was bound on this clause to see the occasion did require; and a majority of the judges who spoke to the question, (Holroyd and Littledale, Js.,) did not say so. • The two reporters do not entirely agree. In 7 Barn, if Cress., both of the two latter judges are made to discuss the question : in 1 Mann, if Byl., Littledale, J. is represented as having given a *272 naked assent to what Holroyd, J. said ; but in neither does it appear that any but Bayley, J. considered the actual occasion of accepting as a condition. The report of his argument is substantially the same in both, though in Bam. 8p Cress, he seems to have thought it sufficient to have called for the letter of advice. Littledale, J., in Barn, Cress., thought the words, as occasion shall require, did notvary the question ; and that the power should be read without them. This was conceding the ground taken by counsel, that the attorney had a discretionary power to judge of the occasion. I have looked into some authoritative books on agency to find how this case has been considered py learned writers who had studied the subject. It is introduced into the late edition of Paley on Agency, (p. 192,) by a simple statement of the case, with the opinion of Bayley, J.; or rather, as illustrating the general remark, that all written powers are to receive a strict interpretation, the authority never being extended beyond that which is given in terms, or is absolutely necessary for carrying the authority into effect. Judge Story mentions the case several times in his work on agency, (pp. 22, 65 to 67, 69.) but evidently considers it as holding no more than that the appointee is bound to see the proper parties introduced. He is evidently of opinion, with Littledale, J., that the words “as occasion shall require,” were no more than what the nature of such a power would imply without them, viz. an authority in the agent to govern himself according to the emergencies of business. The necessity mentioned by Mr. Justice Bayley of calling for the letter of advice was, I think, virtually denied by what Best, Ch. J. and the whole court afterwards held as to letters of instruction in Withington v. Herring, (5 Bing. 492 ; 3 Moore & Payne, 30, S. C.) Such letters are often confidential between the parties, and contain matters not fit to be divulged. He said, all that was necessary for the plaintiffs to enquire for, was the authority. The case of Atwood v. Munnings v/as mentioned by Park, J., and he, like Judge Story, understood it, not as imposing the duty to enquire into the state *273 of the principal’s affairs, but only as to the character of the drawers. Indeed,^there is hardly any rule better settled or of more universal application, than that the appointee need not enquire as to matters in their own nature private or confidential between the agent and principal. It may be doubted, says Mr. Justice Story, if upon this subject there is any solid distinction between a special authority to do a particular act, and a general authority to do all acts in a particular business. Each includes the usual and appropriate means to accomplish the end. (Story on Agency, 70.) Is it among those means that the appointee shall lose his money, because the attorney happens to betray the interests of his principal1? Would not such a rule rather be a means to make the power utterly unavailable 1 No prudent man would advance his money under such a responsibility. The rule supposes a degree of capacity to look into the affairs and even the private intentions of others, which no human being possesses.
In the case at bar, the principal was much abroad, and had left this letter of attorney with the bank for the very purpose of obtaining credit there. It had been repeatedly and for a long time acted upon, the testator having an account at the bank; and the power of Jacob D. Fowler never having been drawn in question. This very case admits the validity of two out of the eleven notes in question. Such circumstances, even without the letter of attorney, should bind the testator’s estate. In Prescott v. Flynn, the defendants’ clerk having been introduced as confidential, drawn bills, and on one occasion only been empowered to endorse in their business, they were, from that circumstance alone, held liable on his subsequent endorsement of their names for his own benefit. Here we have a stronger case. Both the testator and Jacob D. Fowler came with the letter of attorney, and deposited it with the plaintiffs; the attorney had drawn and endorsed through a course of five or six years; the testator, a ship master, being frequently at home, and knowing and approving every act nearly up to the time of the making and endorsing now in question.
*274 In Nichol v. Green, (Peck’s Rep. 288,) the attorney, under a power like the present, dealt directly with the plaintiff, purchasing on his own account, as the plaintiff knew ; and then, under the power, made and endorsed the note in question, Haywood and Peck, Js. held, what we have just now decided in Stainer v. Tysen, (post, p. 279,) on the distinction between taking the note with or without knowledge of the fraud. One judge dissented, and one took no part in the cause. • It does not appear how it was finally decided. The case of Butcher v. Tysen, which was before the circuit court of the U. S., in November term, 1840, (4 Hunt’s Merch. Mag. 456,) decides the same point the same way. The plaintiff cannot complain that the defendant clothed his agent with the means of perpetrating a fraud when none has been actually committed. The difference rests entirely upon that fact. In the cases cited, the question in debate was, whether, by authorizing the agent to issue notes in the name of the principal, without words expressly restricting the issue to his own business, he did not confer the power of issuing them for the benefit of every body, even including the attorney. That the power is to be thus construed, was contended in the case before us, and in Stainer v. Tysen. We have arrived at the conclusion without much difficulty, that to give the power so great an effect, the principal must go farther, and expressly declare his meaning that the attorney may use his notes for the benefit of others beside the principal.
On the distinction which I have endeavored to establish in favor of a bona fide holder, I am of opinion that, in the case at bar, the court below erred when they charged that the attorney had exceeded his power in that sense which avoided these notes in the hands of the plaintiffs. As against his principal, he did exceed his power ; but the executors must look to him, not the plaintiffs, for their indemnity.
The point that the bank had notice through Samuel D, Rogers, the director, does not arise. There was indeed evidence that he had notice and acted as director in respect to nearly *275 if not quite all the notes. If these things finally turn out to be so, of course the plaintiffs cannot recover on those notes in respect to which they were thus affected with notice. (Bank of the United States v. Davis, 2 Hill, 451:) (a) But the question was entirely excluded, by the charge, from the consideration of the jury; and, for aught we can see, the court laid no stress upon it. They put the case on the naked independent question of authority ; and, under the charge given, the jury were bound to find for the defendants, although they believed the plaintiffs were bona fide holders. I have, therefore, as in duty bound, considered them such. No doubt they were so in fact. If not so constructively, owing to one of their agents having had notice, they must fail; but they are none the less entitled to have the question tried and disposed of upon that issue.
Some other minor points were mentioned on the argument by the counsel for the defendants in error ; but the same answer applies. They were not passed upon in the court below. On the whole, I am of opinion that the judgment should be reversed; a venire de novo to go from the court below, the costs to abide the event.
Bronson, J. concurred.

 See The National Bank v. Norton, (1 Hill, 572 ;) Housatonic and Lee Bank v. Martin, (1 Metcalf's Rep. 294 ;) Fulton Bank v. N. Y. and Sharon Canal Co., (4 Paige, 127.)