BENJAMIN B. MUSSEY *vs.* LABAN S. BEECHER.

The defendant, by an instrument under seal, appointed W. P. his attorney, for him, and as his agent, to purchase books, paper and stationery, for the purpose of carrying on business in A., and the same to sell again for his benefit, and on his account, &c., with a proviso, "that said P. shall not make purchases, or incur debts, exceeding in amount, at any one time, the sum of two thousand dollars:" The plaintiff having sold goods to P., and brought his action therefor against the defendant, it was held, that the plaintiff must show, that the goods were sold under the power to P. as the agent of the defendant, and not upon the personal credit of P. ; and that, if at the time of the sale by the plaintiff to P., the latter had already exceeded the limit of his power, the plaintiff would not be entitled to recover, by showing that at the time of the purchase P. represented that he would not thereby exceed his limit; or by showing that at the time of the sale, the plaintiff had inquired of P. as to the agency, and had been informed by him that it was not full, and having no reason to suspect the truth of such declaration, had thereupon sold the goods to P. as agent. WILDE, J., dissenting.

THIS was an action of assumpsit for goods alleged to have been sold and delivered by the plaintiff to the defendant, through the latter's agent, William Pierce.

The case having been referred to an auditor, he reported in favor of the plaintiff, for goods sold and delivered between the 10th of March, 1842, and the 25th of May, 1843 ; and for the balance of two notes, one for $207, dated March 9th, 1842, signed " W. Pierce, agent of L. S. B. ; " and the other for $250, dated August 8th, 1841, and signed in the same manner. The balance, found due by the auditor on the notes was $214·15, and for goods sold, after deducting a set-off, $890·25, making in the whole $1104·40. The jury returned a verdict for the plaintiff for $660·57.

The cause was tried in this court before *Wilde,* J., by whom it was reported for the consideration of the whole court.

The report was as follows : —

It appeared that the plaintiff was a bookseller and publisher in Boston, and that Pierce carried on a bookseller's shop in Andover, as the agent of Leonard Woods, until the 1st of January, 1842, at which date his agency for Woods ceased, and he thenceforth carried on the same business and purchased goods, under a written authority from the defendant. The following is a copy of this instrument : —

"Know all men by these presents, that I, Laban S. Beecher, of Roxbury, in the county of Norfolk, (doing business in Boston,) leather dealer, do hereby constitute and appoint William Pierce, of Andover, in the county of Essex, bookseller, my sufficient and lawful attorney, for me, in my behalf and as my agent, to purchase books, paper and stationery, for the purpose of carrying on business in said Andover; and the same to sell again, for my benefit and on my account, on such credit and at such prices as he may deem meet ; to collect, recover, demand and receive all debts and sums of money due and receivable for and on account of the sales of said goods and merchandise, and generally to do and perform such matters and things as are necessary and proper for the carrying on and conducting of said business.

Provided, however, that said Pierce shall not make purchases or incur debts exceeding in amount at any one time the sum of two thousand dollars, and also that this power or agency shall not extend for a period of time more than one year from the date hereof, or beyond the 1st day of January, A. D. 1842. Hereby ratifying and confirming whatsoever my said attorney may do in the premises. In testimony whereof, I have hereunto set my hand and seal this first day of January, in the year eighteen hundred and forty-one.

E. N. BADGER, witness.                    LABAN S. BEECHER, (seal.)

BOSTON, Jan. 1, 1842.

The foregoing instrument is hereby continued in force for twelve months from this date.                    LABAN S. BEECHER."

This paper, it was admitted, was exhibited by Pierce to the plaintiff, Mussey, prior to the sale and delivery of any of the goods, out of which this controversy arose; and it was proved, that the plaintiff subsequently sold and delivered to Pierce the goods which were charged on the plaintiff's books to Pierce, and bills of which were rendered to Pierce in his, Pierce's, name.

Pierce was called as a witness by the plaintiff, and testified to the custody, execution and delivery of the instrument creating the agency, which the defendant was notified to produce, and which, upon the cross examination of this witness,

was produced. On such cross examination Pierce testified, among other things, that, in fact, the amount of his purchases of various persons, during the period from March 1st to September 1st, 1842, exceeded, at all times, the sum of $2000; that his suspicions were aroused on this point in July and August, but that he did not go into any particular investigation until August; that, before the 27th of August, he had investigated the matter sufficiently to satisfy himself that the agency was full; that, on the 27th of August, he applied to the plaintiff to purchase a bill of goods amounting to $168·23, which was included in the auditor's report; that the plaintiff inquired of him whether the agency was full, and if there was no danger of his buying beyond; that the witness replied, that it was full, and that the bill must be sold to him on his own credit; to which the plaintiff replied, that payments would be making, by and by, which would reduce the amount, and then it would come within the agency, and that he, the plaintiff, should be willing to trust the witness $300 to $400 on his own responsibility. The witness also testified, that, from time to time, during the summer, the plaintiff inquired of him, when he went in to purchase, whether his agency was full; that the witness had sometimes replied, that it was nearly full; that at another time witness thought (but was uncertain) that it was probably full; that, during his agency, he from time to time furnished the defendant with the data respecting the amount of his indebtedness; that the defendant knew in August that the amount far exceeded the sum named in the written authority; and that he knew it in September; witness was more doubtful as to the defendant's knowledge in July, but testified that it was probable that he also knew it in July; that in October the defendant required the witness to notify formally two or three parties he was dealing with, that the agency was at an end, and that among others he notified the plaintiff; that in August, the defendant complained to the witness, that the agency was full, and this led the witness

to make the investigation previously referred to, and he com-municated the result to the defendant.

It was contended by the plaintiff, that there was evidence tending to show, that the limitation, both of amount and time, had been extended or waived by the defendant ; but this was wholly denied by the defendant.   The plaintiff also con-tended, that Pierce was mistaken in his statement, that in August he gave notice to the plaintiff that the agency was full, and that the purchase then made was upon his own per-sonal credit ; and, for that purpose, he offered in evidence certain schedules purporting to set forth his debts, subscribed, sworn to and filed, and afterwards amended by Pierce, in November and December, 1842, in the district court of the United States, in the proceedings under his petition to be declared a bankrupt, and for a discharge from his debts, to show that in the schedules no debt was set forth as due from him to the plaintiff.   To the admission of this evidence the de-fendant objected, but the court admitted the same.   The defendant contended, that the burden of proof was on the plaintiff, to show that the goods sought to be recovered were sold to Pierce as agent for the defendant, under the power above referred to, and that as such power was limited, the plaintiff must also show, that the goods were sold within the limits and provisions of the power, and that if he, Pierce, had already purchased goods to a greater amount than $2000, under the power, the plaintiff could not recover of the de-fendant in this case.

But the court instructed the jury, that the plaintiff must show that the goods were sold under the power to Pierce as the defendant's agent, and not upon the personal credit of Pierce ; and that although the power was limited, and such limitation was known to the plaintiff, yet that the defendant would be liable for Pierce's purchases, even though he had already exceeded the amount authorized by the power, if the jury were satisfied, from the evidence, that, at the time of the purchases, Pierce represented that by such purchases he **would** not exceed his limit.

The court further instructed the jury, that if they were satisfied, that Pierce notified the plaintiff, that the agency was full, that from the time of giving such notice, the plaintiff could not recover, if such agency was in fact full, or he trusted Pierce on his own credit ; and, also, that if afterwards the plaintiff had inquired of Pierce about the agency, and had been informed by him that it was not full, and the plaintiff had no reason to suspect the truth of Pierce's declaration, and if the plaintiff then sold goods to Pierce as agent, as aforesaid, the defendant would be liable for such goods, even though the agency was then full.

If either of the foregoing rulings or refusals of the court was erroneous, a new trial is to be granted, otherwise judgment is to be rendered on the verdict.

*W. Brigham,* for the defendant.

*S. Bartlett,* for the plaintiff.

The opinion of a majority of the court was delivered by

SHAW, C. J. This is an action of assumpsit for goods sold and delivered, which are alleged to have been purchased of the plaintiff by the defendant, through the agency of William Pierce, acting under a power of attorney from the defendant. The question is upon the legal construction of the defendant's power of attorney to Pierce, which is in writing, and is stated at large in the report. To this power was annexed the following proviso : "Provided, however, that said Pierce shall not make purchases or incur debts exceeding in amount at any one time the sum of two thousand dollars, and also that this power or agency shall not extend for a period of time beyond January 1st, 1842." The power was afterwards extended by a memorandum to the 1st of January, 1843.

The presumption is, that the plaintiff knew of the terms of this power and of its limitation, before he sold goods o Pierce, on the strength of it, and on the credit of the defendant ; and, indeed, the evidence was, that he had seen the instrument. Various questions of fact were submitted to the jury on the evidence, as to the extension of the power, or a

waiver of the limitation, and the like; but the real question arises upon the correctness of the instructions, in matter of law.

The court instructed the jury, that the plaintiff must show, that such goods were sold under the power to Pierce, as his agent, and not upon the personal credit of Pierce; and that, although the power was limited, and such limitation was known to the plaintiff, yet that the defendant would be liable for Pierce's purchases, even though he had already exceeded the amount authorized by the power; if they were satisfied, from the evidence, that, at the time of the purchases, Pierce represented, that by such purchases he would not exceed his limit.

In another connection, the same instruction, in effect, was given, with a slight variance of form, as follows: "that if the plaintiff had inquired of Pierce about the agency, and had been informed by him that it was not full, and he had no reason to suspect the truth of Pierce's declaration, and if the plaintiff then sold goods to Pierce, as agent, as aforesaid, the defendant would be liable for such goods, even though the agency was then full."

The former part of this instruction, that it must appear, that the goods were not sold on the personal credit of Pierce, is unquestionably correct; but, in regard to the latter part, which makes the defendant responsible for the veracity and accuracy of Pierce, a majority of the court are of opinion, that it was not correct in point of law.

This power of attorney, which is in the nature of a letter of credit, is precise and limited in amount; and, though it contains some expressions, intimating that the attorney is the general agent of the constituent, to purchase and sell goods, yet this is controlled by the proviso and express condition; and, taken all together, as every written instrument must be, it is an authority to purchase in the name and on the credit of the author of the power, to the amount of $2000, and no more.

The precise point is this, whether, if Pierce, through design

or mistake, represented to the plaintiff, that when he made the purchase in question, he had not purchased on the credit of his principal to the amount of $2000, when, in truth, his purchases exceeded that sum, the defendant was bound by it. It is unquestionably true, that the statements and representations of an agent, in transacting the business of his principal, within the scope of his authority, are as binding on his principal, as any other acts done within the scope of his authority; they are *res gestæ*, and are acts. But an agent cannot enlarge his authority any more by his declarations, than by his other acts; and the rule is clear, that the acts of an agent, not within the scope of his authority, do not bind the principal. It is often said, indeed, that one is bound by the acts of a general agent, though done against his instructions. This is because the acts are within the scope of his authority; and the violation of his instructions, in the execution of such authority, is a matter solely between himself and his principal, which cannot affect a stranger dealing with him without express notice.

The argument is, that the defendant ought to be bound, because Pierce was his agent, and he, by his letter of attorney, had put it in his power to make such purchase. This, it appears to us, assumes the very point to be proved. The plaintiff knew that he was limited to $2000; he knew, therefore, that if he had purchased to that amount, his power, by its own limitation, was at an end. If it were otherwise, a power to purchase to the amount of $2000, would operate as a power to purchase to an unlimited amount. But it is urged, that, upon this construction, no one could safely deal with the agent. This objection, we think, is answered by the consideration, that no one is bound to deal with the agent, whoever does so is admonished of the extent and limitation of the agent's authority, and must, at his own peril, ascertain the fact, upon which alone the authority to bind the constituent depends. Under an authority so peculiar and limited, it is not to be presumed that one would deal with the agent, who had not full confidence in his honesty and veracity, and

in the accuracy of his books and accounts.  To this extent, the seller of the goods trusts the agent, and if he is deceived by him, he has no right to complain of the principal.  It is he himself, and not the principal, who trusts the agent beyond the expressed limits of the power; and, therefore, the maxim, that where one of two innocent persons must suffer, he who reposed confidence in the wrong-doer must bear the loss, operates in favor of the constituent, and not in favor of the seller of the goods.  *Parsons* v. *Armor*, 3 Pet. 413; *Stainer* v. *Tysen*, 3 Hill, 279; *Attwood* v. *Munnings*, 7 Barn. & Cr. 278.  The case of *Putnam* v. *Sullivan*, 4 Mass. 45, was decided on the ground, that the defendants, by leaving blank indorsements with their clerk, had authorized him by his act to bind them as indorsers.

On the whole, a majority of the court are of opinion, that the verdict must be set aside, and a new trial granted.

WILDE, J.  I have been unable to agree with my learned brethren in the decision of the question raised at the trial of this cause; although I fully admit the principles on which the question has been decided.

In my judgment, with great deference to the opinion of my brethren, these principles are not applicable to the present case.  The question, as it seems to me, turns on a well established principle of law, which I am not aware has ever been disputed.

The principle is this, that wherever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.  It is so laid down by Ashhurst, J., in *Lickbarrow* v. *Mason*, 2 T. R. 63, 70.  " The rule," says the learned judge, " is founded purely on principles of law, and not on the custom of merchants."  The same rule of law is laid down by Holt, C. J., in *Hern* v. *Nichols*, 1 Salk. 289, a case very like the present.  That was an action on the case for a deceit practised on the plaintiff, by the defendant's factor, in the sale of several parcels of silk; and it was held by the learned chief justice, that the defendant was answerable for the deceit of

Mussey *v.* Beecher.

his factor, though not *criminaliter*, yet *civiliter ;* for seeing somebody must be a loser by this deceit, it is more reasonable that he that employs and puts a trust and confidence in the deceiver, should be a loser, than a stranger." The same principle is laid down by Parsons, C. J., in *Putnam* v. *Sullivan,* 4 Mass. 45, 54, and by Cowen, J., in *North River Bank* v. *Aymar,* 3 Hill, 263. And the principle is not questioned by Nelson, C. J., who delivered a dissenting opinion in that case ; it was founded, however, on principles not inconsistent with the instructions given to the jury in this case. His opinion was founded on the neglect of the plaintiffs in that case, in not inquiring into the circumstances under which the notes in question were indorsed. "Had the plaintiffs," says the learned chief justice, "gone into that inquiry, in respect to which they were thus admonished by the terms of the power, they would have learned at once, that the attorney had far exceeded his authority, and that he, together with D. Rogers & Son, were in the perpetration of a gross fraud upon the principal. To say that the plaintiffs are *bona fide* holders, and that their title to the paper is therefore to be protected, because they were in point of fact ignorant of the fraud of the attorney, is but saying that a party may acquire rights by his own remissness and neglect ; may wilfully shut his eyes and ears against the truth, when spread before him; and insist, in a court of justice, that he had no knowledge of its existence."

In the present case, Pierce, the defendant's agent, had a very full authority in writing to carry on the business of a bookseller, and to purchase books and stationery, on credit, for and in behalf of the defendant; "provided that he, the said agent, should not make purchases, or incur debts, exceeding in amount, at any one time, the sum of two thousand dollars." On the evidence reported, the defendant's counsel contended, that he was not liable for any purchases made by his agent exceeding the sum of $2000.

But the jury were instructed, "that if, at the time of the purchases, the plaintiff had inquired of Pierce about the

agency, and had been informed by him, that it was not full, and he had no reason to suspect the truth of Pierce's declaration, and if the plaintiff then sold goods to Pierce, as agent, as aforesaid, the defendant would be liable for such goods, even though the agency was then full."

Now, in my judgment, these instructions are not liable to any well founded exception. I admit that the plaintiff was bound to inquire into the agent's authority, and whether the sales to him, on the credit of the defendant, would not exceed the amount limited in his power of attorney. But of whom was he to inquire? He certainly had no means of knowing; and if he might not rely on the representations of the agent, the consequence would be, that no sale could safely be made on credit under the power. But the power was given to be used for the benefit of the defendant, and if given in such a form as to enable the agent to perpetrate a fraud, by obtaining credit by false representations, and credit was so obtained, and a loss occurred, it should be sustained by the defendant, and not by the plaintiff, who dealt with the agent in good faith, without knowing, or having any means of knowing, that he was exceeding his authority.

I am therefore of opinion, upon the authorities, and upon the principle of law to which I have referred, that the instructions given to the jury were correct.

*Verdict set aside, and new trial granted.*