White, J.
The question on which the controversy in this case turns is this: Did Weirick, by affixing his signature in blank upon the letter of the Philadelphia Bank acknowledging the deposit, as between himself and the Mahoning County Bank, a third party, impliedly authorize Wolfe, to whom the letter thus indorsed was delivered by Weirick for presentation, to write, or cause to be written, over the signature, the words “ Pay the within to T. M. Wolfe? ”
It is clear that if Weirick himself had written this order or draft, or expressly authorized it to bo written, the Mahoning County Bank, on presentation of the letter, and on its consenting to accept the deposit made by Weirick in its name, would have been warranted in paying the money to Wolfe, or in applying it according to his direction, although his actual instructions may have required him to pay the money on Weirick’s note.
But as between the bank and Weirick, the liability of the latter for the acts of Wolfe does not depend upon what his actual authority or instructions may have been; but upon *what the acts of Weirick may have induced the officers of the bank, as fair and reasonable men, to believe, in dealing with Wolfe, in regard to the deposit, was the extent and scope of his authority. 1 Parsons on Notes and Bills, 100.
It does not appear that there was any evidence tending to show that the deposit in Philadelphia, to the credit of the plaintiff below, by Weirick, was made upon any previous arrangement or understanding between them. The first knowledge the plaintiff had of the fact appears to have been when the letter was presented by *277 Wolfe, and lie claimed that Weiriek, by his indorsement, had authorized him to draw the money for his own benefit.
The agreement under which the sheep of Wolfe were placed in Weirick’s possession, and by which the proceds of their sale were to be deppsited, as is claimed, for the purpose of being applied to pay the Weiriek note, was made between Wolfe and Weiriek exclusively. It does not appear that the bank had any notice of it. When Wolfe presented the letter, and claimed to control the money, he directed two hundred dollars of the amount to be applied in payment of a like amount, which he had previously obtained from the bank, on his check, to drive the sheep east. It may bo inferred from this that the deposit was known to consist of the proceeds of the sale of the sheep. But no intimation appears from the evidence that the bank had any notice that the sheep did not continue the property of Wolfe up to the time they were sold, or that Wei-rick had acquired any interest in them, or in the proceeds arising from their sale.
, The evidence did tend to show that, though Weiriek was principal on the note sued on, yet, as between him and Wolfe, the money was borrowed for the exclusive benefit of the latter, and that this fact was known to the bank. This, however, is only material in respect to the question under consideration, as showing the intimate relations that subsisted between Weiriek and Wolfe in their business transactions, and was certainly not calculated to awaken suspicion in the officers of the bank as to the good faith of Wolfe.
It is also claimed that Wolfe was insolvent at the time he presented the letter to the bank, and this fact is assumed in *one [305 of the charges asked to be given to the jury; but the fact is neither admitted in the pleadings, nor is there any evidence in the bill of exceptions tending to prove it. But if the fact be admitted, it can hardly be claimed to have been sufficient to cause the bank to distrust Wolfe’s integrity in matters which the defendant had, notwithstanding such insolvency, intrusted him to manage.
Eecurring, then, to the main question : Had Wolfe, in presenting the letter or certificate indorsed in blank, an apparent or implied authority to fill up the blank with an order for the amount of the deposit, payable to himself, upon which the bank might fairly and reasonably rely ?
It is manifest that the object of Weiriek was to get the four hundred and fifty dollars transferred from Philadelphia to tho Mahon *278 ing County Bank. The first step toward attaining this end was to deposit the amount in the Philadelphia Bank to the credit of the Mahoning County Bank. The next was to get the latter bank to accept the deposit thus made to its credit, and to give Weirick, in exchange or payment therefor, credit on its books for a like amount, or for such sum as might be agreed on as an equivalent. The certificate does not show that the deposit was made to pay the note in question, or for any special purpose. The manner in which the Mahoning County Bank should pay for the credit thus given it, was a proper subject for arrangement when it should be advised of the fact and should consent to accept the deposit. The letter or certificate was taken by Weirick from the Philadelphia Bank for the twofold purpose of a voucher for himself, and to satisfy the Mahoning County Bank of the fact that he had made the deposit to its credit. On accepting the deposit, it was competent for the bank, with the consent of Weirick, to have either paid him the money, leaving the note to stand, or to have applied the amount on the note, or to have made the application which was made under the direction of Wolfe; or, in the absence of any direction on the subject, it might, of its own motion, have applied the amount on Weirick’s note.
If the letter had been sent to the bank without the indorsement, the bearer would, perhaps, have had no control over the fund, and the bank, if it had accepted the deposit, would *have been bound either to give Weirick credit for the amount as so much money deposited, or to have applied it as a payment on the note.
The counsel for the plaintiffs in error, defendants below, claim that this was what the bank was bound to have done under the circumstances as they occurred.
Weirick must be presumed to have known what would have been the effect of his sending the paper to the bank without his indorsement, and to have designed to authorize something more by the act of indorsing it. It is admitted by counsel'that he must be presumed to have intended something. They claim, however, that this presumption is satisfied by inferring that he designed, either to guaranty the genuineness of the certificate, or that the Philadelphia Bank would account-to the Mahoning County Bank for the amount.
But this claim, it seems to us, considering the nature'of the transaction, is less reasonable than the presumption that the intention *279 of Weirick was to transfer his interest in the fund, of which the paper was evidence. No reason is shown why he should have supposed that the Mahoning County Bank would require him, before accepting the deposit, to guaranty either the solvency or the genuineness of a letter or certificate of its own banking correspondent.
The claim of Weirick is, that his actual instruction to Wolfe was to require the bank to apply the amount toward the payment of the note, and to no other purpose. Whatever the object or purpose of Weirick was, in making and delivering the blank indorsement, or whatever the instructions were which were actually given, the authority to fill up the blank according to the truth, must be presumed. The authority was intrusted to Wolfe, and to him was also confided the duty of procuring a compliance therewith on the part of the bank. If this confidence was misplaced, and a loss results from the fraud of Wolfe in departing from his actual instructions, as between the bank dealing with him in good faith on his apparent authority over the fund, and Weirick, who conferred such authority, the loss must be borne by Weii'ick. It would be the case where one of two innocent persons must suffer by the fraud of a third; and, in such case, he who ^trusted the third person and placed the means in his hands to commit the wrong, must bear the loss.
It is well settled that if one intrusts his name iu blank to another to procure a discount, he is liable to the full extent to which such other may see fit to bind him, when the paper is taken in good faith without notice, that the authority given has been exceeded. The authority conferred by such blank signatures is said to be that of a general letter of credit. It is no defense against a bona fide holder to prove that the person to whom the paper was intrusted was only authorized to use it for a particular purpose, and had fraudulently converted it to a different purpose; or that he was only authorized to fill the blank upon a certain condition which had not happened. 1 Parsons on Notes and Bills, 110; Fullerton v. Sturges, 4 Ohio St. 529; Putnam v. Sullivan, 4 Mass. 45 ; Selser v. Brock, 3 Ohio St. 307.
It is true, the present is not a ease of discount, but its peculiar facts are such as to warrant the application of the principles which govern in cases of commercial paper made in blank. The letter or certificate was the only evidence Weirick had of his having made the deposit, and the only authority upon which he could *280 rely to obtain credit for the amount from the Mahoning County Bank. The blank signature referred, and could be presumed to refer, to that fund only. Thus limited it had, in the hands of "Wolfe, under the circumstances, the effect of a check signed in blank, designed, in fact, for the use of the maker, but which the holder directed to be filled payable to himself, and upon it obtained the money from the drawee, the latter having no notice of the fraud.
The indorsement in blank having been made, and, with the voucher, delivered by Weirick to Wolfe, before , a credit for the fund to which it related had been obtained at the Mahoning County Bank, and for the purpose of being presented to the bank, it was, as a check in blank", to be regarded as conditional upon the fact of the acceptance, by the bank, of the deposit as so much money in its own possession. But on accepting the deposit, the bank, in the absence of any just grounds to suspect the bona fides of Wolfe, had the right to *presume him invested with full authority over the fund, and might safely pay him the money or apply it as he might direct.

Judgment affirmed.

Scott, C. J., and Day, Welch, and Brinkerhoee, JJ., concurred.