Abbott *v.* Rose.

———— ◦•◦ ————

JAMES ABBOTT *vs.* HARRISON ROSE.

*Promissory note fraudulently issued—evidence relative thereto. Forgery. Negligence.*

A party to a negotiable note is a competent witness to prove that he was induced to sign it by fraudulent representations that it was another and different instrument, even though such note is in the hands of an innocent holder.

An instrument having no validity upon its face is not a subject of forgery.

A person delivering to another a paper bearing his signature with blanks unfilled therein, which he must necessarily expect will be filled to make it a completed instrument, gives implied authority to the person receiving it to fill the blanks ; and if they are filled fraudulently the maker will be liable thereon to a *bona fide* purchaser for value without notice.

Thus, a person who negligently delivers to another a blank note, having the name of the payee and the words "or order" therein, intending that it shall be used for a specified purpose, will be liable thereon if the blanks are wrongfully filled, and the note then transferred to a *bona fide* holder for value, without notice of the fraud.

Abbott v. Rose.

ON EXCEPTIONS.

ASSUMPSIT on a promissory note purporting to be signed by the defendant, dated March 26, 1869, for fifty dollars. At the trial, Mr. Rose admitted writing his name, on the day mentioned, upon the paper on which the note aforesaid now appears, and stated the circumstances under which he did so, as follows :—On the twenty-sixth day of March, A. D., 1869, a man calling himself O. F. Persons, a total stranger to Mr. Rose, called at that gentleman's house in Greene, and said he was round introducing a labor-saving machine, "one of the best in the world ;" that he wanted to get up a club of eight persons in each town to introduce it, and had already obtained four in Greene, being the only ones he had spoken to on the subject, who were well known to Mr. Rose as reliable and responsible men. Persons exhibited to Rose a model, and by it explained to Rose what the machine would do ; "it would load hay and manure, dig potatoes, and ditch." At first Rose refused to negotiate, and the man left the house, but returned in a short time and renewed his solicitations, representing to Rose that he "ran no risk ; had nothing to fear, and nothing to pay ;" "all he asked of the club was to give him the profit on one machine, which he sold for $75." "He said he would give a writing if I (Rose) would sign to be one of his agents, that I should not be liable to give him anything until I had sold a machine for $75, and then I was to give him the profit on one machine, which he called $50. Finally, after talking and being assured in every form that I was safe, nothing wrong about it, nothing to fear or to pay, I told him I would be one of his agents." The defendant testified that Persons then gave him what purported to be a certificate of membership of the club, and "wrote that upon the back, which was to make me secure and safe, that I had nothing to pay." The certificate and endorsement were as follows :

[2 cent stamp.]

"*Receipt of Membership.*

Received of Harrison Rose one hundred dollars which entitles him to one share in the right of Wm. H. Elliott's improved Hay Loader, patented July 3, 1866, for the township of Greene and

county of Androscoggin, for the payment of which this is a full and sufficient receipt.                    LOWELL JOHNSON.
  Dated March 25, 1869.

[2 cent stamp.]

(Endorsed.)   I hereby agree with Harrison Rose that he need not pay for the within share until he sells one machine at seventy-five dollars for said machine.                    O. F. PERSONS."


The witness continued his narrative:—"After I had consented to be one of his agents, he said he wanted me to sign the club-book.  It was a small account-book.  He required me to sign it, and I did.  While I was writing my name in the book, Persons stepped back to the opposite side of the table, and slipped a paper across the table, and said in order to complete this organization, he wanted me to sign the paper that he slipped across.  There was some printing on that paper.  It was a blank form ; I mean not filled out with pen and ink.  There were open spaces between and among the printed words.  They were rather large.  There was no writing on the paper before I wrote my name.  I wrote my name on the paper that he passed across when he told me what the object was.  I had the pen in my hand then.  The instant I took my hand from the paper he caught it up, saying, 'this is nothing but an order, it don't require a stamp.'  I wrote on the lower part of the paper, which was about the size of the note in suit.  I signed no other paper than what I have stated ; wrote my name that day on no other paper than what I have stated.  I did not at any other time sign a paper of the purport of this note in suit, which I first saw when shown to me in Lewiston by Mr. Whitmore, a week ago last Saturday."  On cross-examination he added:  "I am sure there was no other paper to be signed to complete the transaction between us, besides the book and this agreement.  When he slipped this paper across the table for me to sign, I never read a word on it.  I asked him no questions about it at all.  All I can say is, I was to blame for not asking him what it was for.  I can read very well.  I had no idea what

I was signing, only what I have said. He caught it up as soon as it was signed, and said it was only an order, and did not need a stamp. I did not ask him what the order was for. He made that expression, and put it in his book. I acknowledge I was a fool. I did not ask him to let me look at it and read it, when he said it was an order. I did not think anything particular about it till a few days afterward."

The defendant's sister testified that she was present at the interview, and corroborated his statement of the transaction.

This note was sold with others by Persons to Carr & Williams, of whom he had hired teams; they sold them all to N. M. Whitmore, who again sold the whole lot, before maturity, to the plaintiff. Carr & Williams guaranteed them to Whitmore, and he to Abbott. The note declared upon was of the following tenor, the words italicized being printed in the original, and the rest in writing.

"$50.                           Greene, March 26, 1869.

One year *after date* I *promise to pay O. F. Persons, or order*, fifty *dollars, value received.*                  HARRISON ROSE."

Endorsed, "O. F. PERSONS, without recourse." "Waiving demand and notice, N. M. WHITMORE."

The plaintiff objected to the defendant's testifying to anything tending to impeach the note which he had signed, and permitted to be put into circulation. Among other directions, the presiding justice instructed the jury that if the testimony of the defendant and his sister in respect to it is true, then this instrument was a forgery, and this action cannot be maintained."

To the admission of the defendant's testimony, and the effect accorded to it, by the above instruction, the plaintiff excepted, the verdict being against him.

*A. Libbey,* for the plaintiff.

The defendant should not have been permitted to show fraud, until he had first affected the plaintiff with notice of it, the burden

being on him (Rose) to do so. *Baxter v. Ellis*, 57 Maine, 178; *Lake v. Reed*, 29 Iowa, 258 and 4 Am. R., 209.

The instruction as to forgery was too general, and misled the jury. The true rule, stated most favorably for the defendant, is this; if he was induced to sign the blank note by reason of the fraudulent representations of the payee, fully credited and relied upon by Rose, that it was another paper, and not a note, and in so doing was not guilty of any laches, negligence, or misplaced confidence, by reason of which he enabled the payee to fill up the blanks, and put the note into circulation,—then he was not liable.

The instructions given exclude the element of negligence altogether, and were therefore erroneous. *Putnam v. Sullivan*, 4 Mass., 45; *Fearing v. Clark*, 16 Gray, 74; *Cranston v. Gross*, 107 Mass., 439; *Douglass v. Matting*, 29 Iowa, 498, and 4 Am. R., 238; *Kitchen v. Place*, 41 Barb., 465; *Whitney v. Snyder*, 2 Lans., 477; *Gibbs v. Linabury*, 22 Mich., 479 and 7 Am. R., 675; *Garrard v. Hadden*, 67 Penn. St. R., 82, and 5 Am. R., 412; *State Bank v. McCoy*, 69 Penn. St. R., 204; *Chapman v. Rose*, Alb. Law Jour. for March 8, 1873.

*Baker & Baker, and W. Gilbert*, for defendant.

The instruction as to fraud and the burden of proof was correct. *Aldrich v. Warren*, 16 Maine, 465; *Perrin v. Noyes*, 39 Maine, 384; *Gould v. Stevens*, 43 Verm., 125, and 5 Am. R., 255.

No instruction was requested as to negligence, and it is too late to raise objection now. The necessity for this direction was not so obvious and imperative as to require it to be given unasked. *Harpswell v. Phipsburg*, 29 Maine, 313; *State v. Conley*, 39 Maine, 78.

A party is only liable, on the ground of negligence, upon a paper in the shape in which it leaves his hands, and not as criminally altered by another. *Holmes v. Trumper*, 22 Mich., 427, and 7 Am. R., 664. Here was a combination of fraud and forgery. No agency created, because no consent to what was really done. *Gibbs v. Linabury*, 7 Am. R., 675.

Defendant, even if negligent, is responsible only for those consequences fairly within his contemplation when he did the negligent act. *Sexton v. Bacon,* 31 Verm., 540 ; *McDonald v. Snelling,* 14 Allen, 290 ; *Swan v. N. B. Australasian Co.,* 2 Hurls. & Colt., 188.

DANFORTH, J. This is an action upon a promissory note in the name of an indorsee, who claims as a *bona fide* holder for value, without notice of any infirmity in the note, and for aught that appears, is such. One of the defences set up is that the note was procured by fraud. Under these circumstances it is contended that the defendant who is the maker, is not a competent witness to prove the fraud, until he has first shown that the plaintiff had notice of it. In *Walton v Shelley,* 1 T. R., 296, it was decided that a party to a contract, not interested in the result of the suit, was on the ground of public policy, inadmissible as a witness to prove fraud in its inception. Subsequently in *Bent v. Baker,* 3 T. R., 27, the rule was held applicable to negotiable paper only, and in a still later case, *Jordan v. Lashbrooke,* 7 T. R., 601, *Walton v. Shelley* was overruled, and since that, in England, a party to negotiable paper has in no case been excluded as a witness for the reason of his being a party.

In this country the law has been differently settled in different States. In Massachusetts the question came before the courts in the early case of *Churchill v. Suter,* 4 Mass., 156, and has been discussed in many cases in that Commonwealth, and in our own State since that time. *Manning v. Wheatland,* 10 Mass., 505 ; *Pickard v. Richardson,* 17 Mass., 122 ; *Deering v. Sawtelle,* 4 Maine, 191 ; *Chandler v. Morton,* 5 Maine, 374 ; *Clapp v. Hanson,* 15 Maine, 345 ; *Lincoln v. Fitch,* 42 Maine, 456 ; *Baxter v. Ellis,* 57 Maine, 178 ; and perhaps some others. In all these cases, however, it will be found that the rule has not been carried beyond that of *Churchill v. Suter,* and in all the party was excluded, because the consideration of the note was illegal, or the note void in its inception, and the witness offered was not only a

party to the note but also to its illegality, or a partaker in the wrong which rendered it void.

In *Thayer v. Crossman*, 1 Metc., 416, after a review of the authorities, Shaw, C. J., remarks, on page 421-2 : "From this view of the authorities, and assuming that the rule, as laid down in *Churchill v. Suter*, is the true rule of law in this Commonwealth, we think it will appear to be confined to negotiable bills and notes, actually indorsed and put into circulation by the witness, with a view to give them currency as negotiable securities."

In *Buck v. Appleton*, 14 Maine, 289, Weston, C. J., speaking of the case of *Churchill v. Suter*, says : "It is well known, that the principle, upon which that case was based, has been repudiated in the country from which it was derived, and that neither this court, nor the courts in Massachusetts, have been disposed to extend it."

Does, then, the testimony of the defendant come within the rule as established by the cases referred to ? We think it does not. He was not certainly, a willing party to any wrong in the consideration, or want of consideration, of the note. His testimony now is not inconsistent with any purpose he then had in view, or any intentional act then performed. He did not, according to the testimony, sign the note for the purpose of giving it currency as a negotiable security ; he did not sign it as a note, but only as a different paper, and for an entirely different purpose. The question is not, whether under his statement he is liable, but whether the facts are such that he cannot legally testify to them. As they do not proclaim any turpitude on his part, as they tend to show, not that the paper, as originally signed, was void for the purpose for which it was signed, but that it was not then, and was not intended for a note, we see no reason, grounded upon public policy or otherwise, why the testimony should be excluded. The testimony would certainly be admissible from other witnesses, and under our present statutes, and the rule established by the cases already referred to, and which we do not intend to subvert, is equally admissible from the party, unless by some previous act,

Abbott v. Rose.

inconsistent therewith, he has disqualified himself. Such previous act we do not perceive.

Another defence set up in this case is that of forgery. Upon this the instruction to the jury, to which exception is taken, was : "If the testimony of the defendant and his sister in respect to it, is true, then this instrument was a forgery, and this action cannot be maintained."

If this instrument was a forgery it was so by virtue of an alteration and not of its original execution. It is true the defendant testifies, substantially, that he signed it under a misapprehension, into which he was led by the acts and statements of the payee. He further testifies that, "there was some printing on that paper ; it was a blank form. * * * There was no writing on that paper before I wrote my name." The only conclusion to be drawn from this testimony is that the paper was an unfinished one, to which something more was to be added to complete it. The paper at that time, then, had no validity for any purpose whatever. The case of *State v. Shurtliff*, 18 Maine, 368, differs materially from this. That was a criminal proceeding, the purpose of which was to punish the wrong-doer. This is a civil action upon a negotiable instrument, and involves the rights of an innocent holder. If a forgery, it became so only by the alterations made subsequently to its delivery. These changes or additions were certainly sufficiently material to make it such. But whether so or not, might depend upon the relations existing between the parties. If the paper was delivered as a completed instrument, without authority express or implied to fill any blanks or make any changes, the subsequent additions would clearly be a forgery. If, on the other hand, it was delivered as an incomplete instrument with blanks to be filled, then, even if the blanks were fraudulently filled, and the instrument made different from what the signer authorized or intended, according to the case of *Putnam v. Sullivan*, 4 Mass., 45, it would not be forgery, but a breach of trust.

It becomes, then, material to know the object or purpose for which this instrument was delivered to the payee ; not what the defend-

ant might suppose the instrument itself to be ; but did he deliver it with blanks which he expected to be filled ?   His own testimony may be entirely true and yet the inference may be drawn, if not from that alone, certainly from that and other testimony in the case, that the instrument which now turns out to be a negotiable note, was executed and delivered as an unfinished paper with blanks to be filled.   The possession of such a paper, with a genuine signature, would be, at least, *prima facie* evidence of authority to fill it up.   *So. Berwick v. Huntress*, 53 Maine, 89 ; Story on Promissory Notes, § 37; *Fearing v. Clark*, 16 Gray, 74.   By the instruction complained of, the question, whether the paper was delivered as an incomplete paper with blanks to be filled, was taken from the jury, and they were required, if they believed the defendant's testimony, to consider it, when delivered, as complete, and all subsequent filling of blanks,—for it does not appear that there were any other changes—as not only without authority, but such as would render the note void even in the hands of an innocent holder.   In this there was error.   It is however said, that if the defendant is believed, whatever the condition of the paper when delivered and the authority which might be inferred from that delivery and condition, it was not delivered as a note, or for the purpose, or expectation, of having it made into a note.   This may be true, but how does it affect the case ?   If the instrument was delivered for any purpose as unfinished, to be perfected by the person to whom it was delivered, then for such purpose such person becomes the defendant's agent, and having furnished him the means with which he has committed a fraud, however unfaithful to his trust the agent may be, the principal must suffer rather than an innocent person.

But assuming that the payee of this note has been guilty of forgery in filling up the blanks, as he is claimed to have done, it does not follow that the defendant is free from all responsibility in the matter.   By his statement, he voluntarily signed the blank out of which this note was made, supposing, it is true, that it was for a different purpose.   The blank passed from his hands by his con-

Abbott *v.* Rose.

sent; a consent, perhaps, fraudulently obtained, but nevertheless a consent. That blank was such as could only be converted into a negotiable note. In it was the name of the payee, and the words "or order." When he signed it, there was nothing to prevent his reading it if he had so chosen, and it is difficult to understand how he could have observed it sufficiently to give the description he has, without knowing what it was. Under such circumstances the law presumes his knowledge of its contents. The note, then, owed its existence to some instrumentality on his part. The perfected note was the result of his putting his name to the blank; a result which might have been contemplated as the natural and even probable effect of such an act. The signature contributed to that end very materially, and that end was reached by the confidence, misplaced though it was, which he had in the payee. If, then, this act resulted from negligence, or a want of due care on the part of the defendant, however innocent he might be, he would be responsible to any person equally innocent with himself who is injured by that act. This results not only when the person committing the fraud is the appointed agent of the defendant, but where no such relation exists. In the former case the liability would attach where no negligence is imputable, and in the latter only where it is.

In *Somes v. Brewer*, 2 Pick., 184, a case which has some significance in its bearing upon this, Parker, C. J., on page 202, states the rule with great clearness and force. He says: "It is a general and just rule, that when a loss has happened which must fall on one of two innocent persons, it shall be borne by him who is the occasion of the loss, even without any positive fault committed by him, but more especially if there has been any carelessness on his part which caused or contributed to the misfortune."

In *Gibbs v. Linabury*, 22 Mich., 479, which was an action upon a note delivered by the signer in ignorance of its true character and by means of fraud, it was held, that the note was void even in the hands of a *bona fide* purchaser. But it was found, and made an element in the decision, that the maker signed it "under circumstances devoid of any negligence on his part."

In *Washington Savings Bank v. Ekey & als.*, lately decided in Missouri and reported in the American Law Register for October, 1873, it was held that an alteration of a note after its execution by filling a blank so as to make it draw interest when by the agreement of parties it was to bear no interest, would avoid the note in the hands of an innocent holder. But this is inconsistent with other cases in the same State as is shown in a note to that case in the Law Register. In *Trigg v. Taylor*, 27 Misso. R., 245, the note was held void, but the court says: "If, however, a bill, note or check is so negligently drawn, with blank spaces left for the addition of other words or figures, that alterations can be so made as not to excite suspicion, the loss ought to fall upon the person in fault, according to the familiar rule, that when one of two persons must suffer by the act of a third, the one who affords the means to the wrong-doer must suffer the loss." The rule is again recognized in *Ivory v. Michael*, 33 Misso., 398. Upon this question of negligence it can make no difference that the party did not intend to deliver a note. If the delivery itself was through a want of care the effect is equally injurious, as if the delivery was intentional but with blanks carelessly left unfilled. This doctrine is consistent with that held in a numerous class of cases in which it has been decided that a material alteration of a note after its execution without the consent of the maker, avoids it even in the hands of a *bona fide* holder, such as *Waterman v. Vose*, 43 Maine, 504; *Agawam Bank v. Sears*, 4 Gray, 95; *Wade v. Worthington*, 1 Allen, 561; *Belknap v. National Bank of North America*, 100 Mass., 376, and many others. In these cases the note was delivered in the course of business as a completed instrument with no blank spaces unfilled and no question of a want of care in the delivery, or the form of the paper. The connection of the maker with the note, so far as any act pertaining to its validity is concerned, had entirely ended, and the confidence in and opportunities for fraud to the third party were furnished as much by the one as the other. The two parties were equally innocent, and therefore the only question raised was whether the contract set up

was the one into which the party had entered. In the case at bar the liability, if any, rests upon an entirely different ground. It is not claimed that the defendant entered into the contract sued, but that if he delivered the note as an undertaking on his part not finished, but to be afterwards completed, he so far made Persons his agent as to be bound by his acts to an innocent purchaser; or if he carelessly delivered the paper with his signature attached, he thus furnished Persons the means of fraud and so would be estopped from denying his liability to a *bona fide* holder for the legitimate results of his negligent acts, and we think the jury should have been instructed in accordance with these views.

*Exceptions sustained.*

APPLETON, C. J., CUTTING, VIRGIN, and PETERS, JJ., concurred.