## LAURA E. WINCHELL *v.* LEWIS CRIDER.

A person possessed of the ordinary faculties and ability to read, signed and delivered a negotiable promissory note without knowing it to be such, but without reading the same, having an opportunity to do so, relying solely on the representation of the payee that the paper was an instrument other than a note. *Held,* as against a *bona fide* holder before maturity for value, such maker will not be permitted to deny the due execution of the note.

ERROR to the District Court of Jefferson county.

The plaintiff brought her action as indorsee of a negotiable promissory note for $500, dated April 15, 1874, payable to the order of R. R. Fenner & Co., six months after date, with eight per cent. interest, against the defendant as maker.

The defendant, by his amended answer, denied that he made, signed, and delivered the note mentioned in the petition to R. R. Fenner & Co., and alleged that the note was false, fraudulent, and forged.

On motion of the plaintiff, the words "false and fraudulent" were stricken out of the answer, to which defendant excepted.

The cause was tried by a jury, and verdict and judgment for the plaintiff.

On a motion for a new trial, a bill of exceptions was taken, setting out all the testimony and charge of the court, and also certain requests which the court refused to give.

The following is so much of the bill of exceptions as is deemed material:

"Be it remembered that on a trial of this cause to a jury in the court of common pleas within and for the county of Jefferson and State of Ohio, at the June term thereof, A. D. 1875, the action being on a promissory note purporting to have been signed and delivered by Lewis Crider to R. R. Fenner & Co. for the sum of $500, dated April 15, 1874, payable six months after date and assigned to plaintiff before due—said note being partly printed and partly written,

known as a blank note filled up—and the issue joined between the plaintiff and defendant being whether the defendant made, signed, and delivered said promissory note to the said R. R. Fenner & Co., and also whether said note was a forged note.

" The plaintiff, to maintain the issue on her part, offered said note in evidence, a duplicate contract, together with a property statement—the last two papers signed by the said defendant as admitted—and testimony tending to prove that the defendant made, signed, and delivered said note to the said R. R. Fenner & Co.

" The plaintiff having rested, the defendant, to maintain the issue on his part, was sworn and examined as a witness, and testified as follows:

" ' I reside in the county of Jefferson, State of Ohio, and am a farmer. Two men came to my place about dinnertime on the 15th day of April, 1874, in a two-horse wagon, and had their horses put in the stable and fed; they came to the house and took dinner. I made no charge against them. After dinner we hitched the horses up in the wagon—the stable is some distance from the house; I helped them to unhitch, feed, and hitch up again.

" ' After they were ready to start away, one of them said he heard I would be a good man to sell plows; the other man was in the wagon. Nothing was said about their business until they were ready to start away. They said they were agents for the sale of a patent plow or the territory therefor. One of the men took me some distance from the wagon and showed me a model of the plow, and made a contract with me to sell plows for them in the townships of Salem and Wayne, in Jefferson county. They agreed to send me the plows from Hamilton, Butler county, Ohio, to Unionport, said county. I agreed to sell the plows for them, and for my services was to have the difference between the cost price and the retail price, which they said would be ten dollars each plow. I was to be at no expense except to haul the plows from Unionport to my place of residence.

They gave me an order for thirty plows on the Hamilton Plow Company, and told me to send the order to the Hamilton Plow Company, and they would send the plows to me.

" ' They told me to use the money I received from the sale of the plows, or put it in bank for them, and they would come around every six months and get it; and told me if I could not sell the plows they would come and take them off my hands and make other arrangements for their sale. They took a schedule of my property to satisfy the Hamilton Plow Company that I was a safe man to send plows to.

" ' While the man on the ground was talking to me, the one in the wagon, on an elevated seat, had prepared some papers. He had pen, ink, and paper, which he took out of a box. He wrote on the box, and when he got done writing, the man on the ground said to the man on the wagon: " Read it; you can read it better than he can." The man in the wagon then read it to me; read nothing in the paper about a note.

" ' The man on the ground then got in the wagon and I stood on the wheel. The papers were arranged one on top of the other. It being windy, they each assisted in holding the papers which I signed, by spreading their hands out upon them. There were three papers; they said they were contracts in duplicate and a property statement. One of the contracts was kept by me. I signed no other papers than the contracts in duplicate and the property statement, three in number. The other contract and property statement they took with them. The papers were so placed that the signatures, when written, were close together. They then left immediately.

" ' I did not know that the contract said anything about a note; neither did they, when they read it to me, read anything about a note. I never read the contract until I received information that the note was in the hands of an attorney in town for collection. The contract was read to me before I got on the wheel.

" ' The signature to the note looks like my signature. I never signed the note. I sent for the plows; they never

came. I made no other contract. I did not read the papers at the time I signed them; I can read. No objection was made to my reading the papers at or before the time I signed them.'"

Before the argument of the cause to the jury commenced, defendant asked the court, in writing, to charge the jury as follows, to wit:

"1. Under the first defense, in which defendant denies that he made, signed, and delivered the note sued on, if you shall find from the evidence that defendant signed the note not believing nor knowing it to be a note, nor intending to sign a note, but was induced by the persons receiving the note to believe that he was signing a contract of agency for the sale of plows, or property statement, and that he did so believe and affixed his name as and to such paper, and not a note, and you further find that defendant was not guilty of any negligence in so signing, then your verdict should be for the defendant."

The court refused to give such charge as requested, and to said refusal defendant then and there excepted.

Defendant further requested the court to charge the jury as follows, to wit:

"2. If you find that defendant did not deliver the note in suit as and for a note, and that he did not, at the time of delivery thereof, know nor believe it to be a note, but did then and there deliver said note believing it to be a contract of agency for the sale of plows, or property statement, and not a note, and if you further find that defendant, in so delivering said note, was not guilty of negligence, then your verdict should be for defendant."

The court refused to give such charge as requested, to which refusal defendant then and there excepted.

Defendant further asked the court to charge the jury as follows, to wit:

"3. If the jury believes that it is inconsistent with any other reasonable hypothesis than that the two men who obtained the signature of Crider to the note sued upon, made the note, or a material part thereof, with an intent to de-

fraud any one, then the verdict should be for the defendant."

This charge the court also refused to give, to which refusal defendant then and there excepted.

The following was the only proposition contained in the charge as given to the jury which was specially excepted to:

" If you are satisfied from the evidence that the agents of R. R. Fenner & Co., who called on the defendant on April 15, 1874, to appoint him an agent for the sale of plows, who, by fraud, got his (Crider's) signature to the paper sued on, and you are satisfied that the paper was, at the time of signing, a printed blank promissory note, or a printed blank promissory note filled up, then, as between this plaintiff in this suit and the defendant, he made and signed a valid note, and the plaintiff is entitled to your verdict, although the defendant, in parting with his signature, did not intend to make, give, or sign a note."

The judgment of the court of common pleas was reversed by the district court on a petition in error, which contained the following assignments for error:

1. The court erred in refusing to give the instructions which the said Lewis Crider prayed the said court to give, which said instructions so requested, are, in writing, attached to the bill of exceptions and made part of the record in this case.

2. Said court erred in the written instructions given to the jury on the trial of said action; which said written instructions, so charged to the jury, are attached to the bill of exceptions and made a part of the record of this case.

3. The court especially erred in their said charge to the jury in that part thereof numbered 17 on the margin of said charge.

4. The court erred in sustaining the motion of the plaintiff filed to strike from the second defense of the amended answer the words " false, fraudulent."

5. The said judgment was given for the said Laura E. Winchell, when it ought to have been given for the said Lewis Crider, according to the law of the land.

The question now is, did the district court err in revers-
ing the judgment of the court of common pleas?

*Keifer & White,* and *W. P. Hays,* for plaintiff in error:

It is well settled that "a person who is induced to sign a
promissory note through the false and fraudulent misrepre-
sentations of another, believing it to be a contract in rela-
tion to services, is nevertheless liable thereon to a *bona fide*
holder who takes it before maturity." *Douglas* v. *Matting,*
29 Iowa, 498 ; *Chapman* v. *Rose,* 56 N. Y. 137 ; *Nebeker* v.
*Cutsinger,* 48 Ind.; *Glenn* v. *Porter,* 49 Ind. 500 ; *Phelan* v.
*Moss,* 67 Penn. St. 59 ; *Holmes* v. *Hale* (decided Jan. 16, 1875
—reported in Chicago Legal News, Feb. 1875); *Citizens'
National Bank* v. *Smith,* 55 N. H. 593 ; *Comstock* v. *Hannah,*
76 Ill. 530 ; *Abbott* v. *Rose,* 62 Maine, 194.

If a party sign a blank form of a promissory note, and
leave it in the power of another to fill it up, and indorse it
to an innocent holder for value, before due, the party thus
signing is liable to such innocent holder, on the principle
that he who is most in the wrong should suffer the loss.

In addition to the cases already cited recognizing this
principle, the following are in point: *Yocum* v. *Smith,* 63
Ill. 321 ; *Selser* v. *Brock,* 3 Ohio St. 302 ; *Clark* v. *Whitaker,*
50 N. H. 474 ; *Clark* v. *Pease,* 41 N. H. 414, 423–425 ; *Doe*
v. *Burnham,* 31 N. H. 431 ; *Perkins* v. *Chellis,* 1 N. H. 254 ;
*Clement* v. *Leverett,* 12 N. H. 318 ; *Emerson* v. *Crocker,* 5 N.
H. 159 ; *Garrard* v. *Hadden,* 67 Penn. St. 82 ; *Zimmerman* v.
*Rolfe,* 74 Penn. St. ; *Sweetzer* v. *French,* 2 Cush. 309 ; *Tucker*
v. *Morrill,* 1 Allen, 528 ; *Powers* v. *Ball,* 27 Vt. 662 ; *Gris-
wold* v. *Davis,* 31 Vt. 390 ; *Humphreys* v. *Clark,* 27 Conn.
381 ; 1 Par. on Notes, 279 ; 2 Par. on Notes and Bills, 42 ;
Shear. & Redf. on Neg. 227, ch. 3 ; *Swan* v. *North Brit-
ish Co.,* 7 H. & N. 603 ; 2 H. & C. 175, and cases referred
to ; *Shirts* v. *Overjohn,* S. C. Mo., May, 1875 ; *Lickbarron* v.
*Mason,* 2 Term, 70.

Nothing short of bad faith or actual notice of infirmity
in a negotiable promissory note will defeat it in the hands
of a holder for value, before maturity.

Circumstances sufficient to excite the suspicion of a prudent man, will not be sufficient to let the maker in to defend. *Davis* v. *Bartlett,* 12 Ohio St. 534; *Goodman* v. *Simonds,* 20 How. (U. S.) 343; *Bank* v. *Neal,* 22 How. (U. S.) 96; *Murray* v. *Lardner,* 2 Wallace, 110; *Hotchkiss* v. *National Banks,* 21 Wall. 354; *Swift* v. *Tyson,* 16 Pet. 1; *Phelan* v. *Moss,* 67 Penn. St. 59; *Welch* v. *Sage,* 47 N. Y. 143; *Saybel* v. *Nat. Bank,* 54 N. Y. 288; *Miller* v. *Findley,* 26 Mich. 249; *Amos* v. *Merriam,* 98 Mass. 294; *Norris* v. *Langley,* 19 N. H. 423; *Converse* v. *Foster,* 32 Vt. 320; *Conklin* v. *Underhill,* 3 Scam. 388.

*Owesny & Gaston,* and *McCauslin & Jordan,* for defendant in error.

McILVAINE, J. This case has been considered in connection with *DeCamp* v. *Hamma* and *Ross* v. *Doland,* heretofore reported in this volume.

According to the principles announced in DeCamp's case, propositions number 1 and 2, as requested by the defendant, stated the true rule of the law, and should therefore have been given in charge to the jury, if the testimony in the case even tended to show that the defendant was free from negligence in the execution of the note. These requests fairly assumed the true test of the defendant's non-liability, to wit, that he was without negligence in the premises.. We have looked into the testimony for the purpose of seeing whether the defendant could have been prejudiced by these refusals, but instead of finding evidence tending to relieve the defendant from suspicion of negligence, we find indubitable proofs of gross negligence on his part. There was some testimony tending to show that the name of the defendant to the note was not his genuine signature, but that fact is not an element contained in the propositions requested and refused. These requests assume that the signature was genuine, but obtained by fraud and without negligence on the defendant's part. And the genuineness of the signature being granted, the case made on

the proof was that the defendant relied solely on the representations of Ingalls as to the character of the paper. His own testimony was : " I did not read the papers at the time I signed them ; I can read. No objection was made to my reading the papers at or before the time I signed them." When all the testimony was in, if it had been demurred to on the ground that proper care and caution had not been exercised by the defendant in the premises, the demurrer should have been sustained by the court. Upon this point there was no issue of fact for the jury to determine. The admitted conduct of the defendant presented a mere question of law. And the law, upon the admitted fact, is that the defendant was guilty of negligence, and therefore there was no error to his prejudice in refusing to give these instructions to the jury.

The 3d request was properly refused, as in it the element of care on the part of defendant was omitted.

The 17th proposition in the charge as given, when considered in the case as it was made in the proof, was not objectionable. It is true the rule, as given to the jury for their guidance, contained no qualification in favor of the defendant, if the jury had found him free from fault or negligence in the transaction ; but, as shown above, such qualification, had it been made, would have been a mere abstraction.

Did the court of common pleas err in striking from the allegations in the defendant's answer, to wit, " the said note is false, fraudulent, and forged," the words " false and fraudulent ?" We think not. The allegation that the note was forged remained in the answer ; and if the words stricken out were meant to describe the note as other than " forged," they certainly did not give it any quality or character which made it invalid in the hands of an innocent indorsee before maturity and for value. But, again, whatever the pleader may have meant by the words " false and fraudulent," the scope of the issues which remained, to wit, that the note was forged, and that the defendant " did

not make, sign, or deliver" it, was ample for the admission of all the testimony offered in his defense.

Judgment of the district court reversed, and the judgment of the common pleas affirmed.