# WHEELING.

### First National Bank of Parkersburg v. Johns.

Submitted June 20, 1882—Decided November 10, 1883.

1. A *bona fide* holder of negotiable paper, who purchased it for value in the ordinary course of business, before maturity and without notice of facts, which impeach its validity between antecedent parties, has title thereto unaffected by such facts and may recover on such note, although as between such antecedent parties it is without legal validity. (p. 524.)

2. A *bona fide* holder of negotiable paper has a valid title and can recover against the maker thereof, unless at the time he purchased the note it was absolutely void, although the maker was induced to sign such note by fraud, not intending to sign such a note but a paper of an entirely different character. And in such case the question of negligence in the maker forms no legitimate subject of enquiry. (p. 535.)

3. Where one of two innocent parties must suffer by the act of a third, the one, who by his act has enabled such third person to cause the loss, must sustain it. (p. 535.)

4. The case of *Bank* v. *Morehead*, 5 W. Va. 74, overruled. (p. 534.)

The facts of the case are fully stated in the opinion.

*Walter S. Sands* for plaintiff in error.

*John A. Hutchinson* for defendant in error.

Johnson, President:

The plaintiff brought its action of debt in the circuit court

of Wood county in January, 1880, against the defendants Samuel Johns and D. H. Leonard. The note sued on is as follows :

"$210.    Four months after date I promise to pay to H. K. White & Co., or bearer, two hundred and ten dollars, negotiable and payable without offset at the First National Bank of Parkersburg, West Va., value received.

"SAMUEL JOHNS."

Endorsed H. K. White & Co., D. H. Leonard.

After maturity and protest of the note the plaintiff brought its action. On the 17th day of March, 1880, the defendant Leonard pleaded *nil debet,* and the defendant Johns tendered the following special pleas marked Nos. 1 and 2 :

### SPECIAL PLEA NO. 1.

"And the said defendant, Samuel Johns, comes and says that about the date of the said supposed note in the declaration mentioned, a person representing himself to be named McMahon, and pretending to be acting for and on behalf of the said supposed H. K. White & Co., came to the dwelling house of the said defendant, Johns, who then resided and now resides in Tucker district, in Wirt county, West Virginia, the said defendant being a farmer by occupation, and being entirely unacquainted with commercial business, and falsely and fraudulently represented that he was solicitor to procure the services of the said defendant as agent for the said H. K. White & Co. to sell their pretended patent washing machine, called the 'White Washing Machine,' and after falsely and fraudulently prentending and representing that the said machine was valuable, and that the defendant would have no trouble in selling said machines as agent for the said H. K. White & Co., the said defendant, with great hesitation on account of his want of knowledge in such business, but relying implicitly on the statements, knowledge and representations of the said McMahon so pretending to represent the said White & Co., finally consented to act as such agent, and thereupon the said McMahon, on behalf of the said pretended H. K. White & Co. (the said defendant not knowing whether in fact there be any such firm as H. K. White & Co.) proposed to send to the said defendant, and he agreed to receive, six

dozen and one half 'White Washers' at five dollars each, for which the said defendant was to account for and pay thirty dollars on each dozen ordered as they were sold, and the balance, two hundred and ten dollars, in four months after such sales were made by the said defendant as such agent; and the said defendant being induced by the said McMahon to become such agent as aforesaid, for the purpose aforesaid, and ignorant the of fraudulent purpose and design of the said McMahon in the premises, was then and there informed by the said McMahon, so pretending to represent the said H. K. White & Co., that in case the said six and one half dozen of said 'White Washers' should be ordered and sold by the said defendant as such agent, there would then, in that event, be due to the said supposed H. K. White & Co. an estimated balance of two hundred and ten dollars, which would be payable as aforesaid ; and thereupon the said McMahon suggested and claimed that it would be necessary for the said defendant to make a note or memorandum of the amount of the said estimated balance, which would be due as aforesaid on condition as aforesaid, which note or memorandum should be retained by the said McMahon or the said H. K. White & Co. as an account by which to settle with the said defendant as such agent as aforesaid when sales should be made of said 'Washers' as aforesaid; and thereupon the said McMahon then and there pretended to make a note or memorandum in writing, as the defendant supposed, for the purpose aforesaid, and upon the faith and understanding it was in effect and substance no other than such note or memorandum, and without any understanding or agreement or intention on the part of the said defendant to make or sign any such negotiable note as is alleged in the said declaration, and without any negligence on his part, the said defendant did sign what was so represented to him as aforesaid as but a simple memorandum or note as aforesaid, for the sole purpose aforesaid, and not as any such negotiable note as in the said declaration is alleged; and the said McMahon then and there fraudulently pretended that the said note or memorandum was not to be used by McMahon or the said H. K. White & Co., but was to be held by them until settlement should be made between the said defendant and H. K. White & Co. after sales of said

machine should be made; and therefore the said defendant says that the said note in the declaration mentioned was obtained and procured from the said defendant by the fraud and artifice of the said McMahon, so pretending to represent the said White & Co. as aforesaid, and was thus deceived as to the nature and character of the said paper itself, which the said defendant signed, not with the understanding that it was a *negotiable note*, but that it was a mere note of hand, and the said defendant at the time of signing said note or memorandum, had no intention or design of making negotiable paper, which it now appears he was, in manner and form as aforesaid, fraudulent tricked and deceived into signing by the said McMahon, pretending to represent the said H. K. White & Co.

"And the defendant further says that the said false and fraudulent representations and the said agreement and agency, which were so founded upon such said false and fraudulent representations and deceit, were the sole and only considerations of said note. And this the said defendant is ready to verify.

"Wherefore he prays judgment whether the plaintiff ought to have or maintain its action aforesaid thereof against him."

### SPECIAL PLEA NO. 2.

"And for further plea in this behalf, the said Samuel Johns says that the said note in the declaration mentioned was procured and obtained from him by the fraudulent representations and deceit practiced on him, the said defendant, by an agent or pretended agent of the said supposed H. K. White & Co., of which the plaintiff had notice; and this he is ready to verify. Wherefore he prays judgment whether the plaintiff ought not to be bound of its action thereof against him as aforesaid."

To the filing of which special pleas the plaintiff objected, which objections were overruled, and the said pleas were filed; and thereupon the plaintiff replied generally thereto. The defendant, Johns, also pleaded *nil debet.* On the 10th day of December, 1880, the case was tried by a jury upon the issues joined; and the jury rendered a verdict for the debt against defendant Leonard, and found for the defendant Johns. The plaintiff moved to set aside the verdict as con-

trary to the law and evidence, which motion the court over-ruled and entered judgment upon the verdict. Upon the trial the plaintiff tendered two bills of exceptions to the rulings of the court, which were duly signed. The first certifies all the evidence and is to giving certain instructions asked by defendant, Johns, and refusing to give the first instruction asked by the plaintiff without modification, and to the modification, and in refusing to give the second instruction asked for by the plaintiff. The second is to the refusal of the court to set aside the verdict and grant a new trial. The instructions related to the first special plea filed; and if we come to the conclusion that the said special plea raised no defence to the action, it will not be necessary to consider the instructions, as the same questions are raised by the instructions as are in involved in the filing of the pleas.

There is no question raised in this case by plea or otherwise, that the plaintiff obtained the negotiable note sued on in the usual course of business before maturity, and that he paid value therefor, and had no notice of any fraud in the procurement of the note.

Should the court have permitted the first plea to be filed? Does it present a defence to the action? The well established rule of law is, that a *bona fide* holder of negotiable paper, who purchased it for value in the ordinary course of business before maturity and without notice of facts, which impeach its validity between antecedent parties, has title thereto unaffected by such facts and may recover on such note, although as between such antecedent parties it is without legal validity. *Swift* v. *Tyson*, 16 Pet. 1; *Goodman* v. *Simonds*, 20 How. 343; *Brown* v. *Spofford*, 95 U. S. 481; *Central Bank* v. *Hammett*, 50 N. Y. 159; *Bank* v. *Hoge*, 35 N. Y. 65; *Bailey* v. *Bidwell*, 13 M. & W. 73; *Duncan* v. *Scott*, 1 Camp. 100; *Harvey* v. *Towers*, 6 Exch. 656; *Zimmerman* v. *Rote*, 75 Pa. St. 188; *Phelan* v. *Moss*, 67 Pa. St. 59; *Brown* v. *Reed*, 79 Pa. St. 370; *Powers* v. *Ball*, 27 Vt. 662; *McDonald* v. *Bank*, 27 Ia. 319; *Douglass* v. *Matting*, 29 Ia. 498; *Taylor* v. *Atchison*, 54 Ill. 196; *Ruddell* v. *Fhalor*, 72 Ind. 533; 48 *Id.* 436; 55 *Id.* 140; 64 *Id.* 120; 66 *Id.* 326; 67 *Id.* 256; 70 *Id.* 19; 73 *Id.* 199; *Chapman* v. *Rose*, 56 N. Y. 137; *Murray* v. *Lardner*, 2 Wall. 110; *Nance* v. *Lary*, 5 Ala. 370; *Bank* v. *Smith*,

55 N. H. 593; *Vather* v. *Zane*, 6 Gratt. 246; *Wilson* v. *Lazier*, 11 Gratt. 477; *Davis* v. *Miller*, 14 Gratt. 1.

In *Putnam* v. *Sullivan*, 4 Mass. 45, it was held, that when a merchant intrusts his clerk with his blank endorsements, and one by false pretences obtains and uses them, such fraudulent use of them is not a forgery, nor is it such a fraud as will discharge the endorser against the endorsee.

In *Wheeler* v. *Guild*, 20 Pick. 545, it was held, that where a person takes a promissory note, transferable by delivery and not overdue or otherwise apparently dishonored, for a valuable consideration, in the usual course of business and without actual or constructive notice, that the holder has no right to collect or receive it, his title thereto is valid, notwithstanding it may have been lost by or stolen from the true owner, or deposited with such holder for a special purpose without authority to collect or transfer it.

In *Gould* v. *Segee*, 5 Duer 260, it was held, that the rule, which protects the *bona fide* holder of negotiable paper fraudulently or feloniously put into circulation, applies to all negotiable paper, whether payable to bearer or order, immediately or on a future day.

In *Shipley* v. *Carroll*, 45 Ill. 285, it was held, that the innocent holder for value of negotiable paper, endorsed before maturity, is protected under the rules of the common law, although the instrument may have been stolen or otherwise wrongfully put into circulation.

In *Ingham* v. *Primrose*, 97 E. C. L. 82, it appeared, that A. accepted a bill and gave it to B. (who put his name thereto as drawer) for the purpose of his procuring it to be discounted and handing over the proceeds to him. B. having failed to discount it returned the bill to A., who tore the bill in half (intending as the jury found to cancel it), and threw the two pieces into the street. B. picked them up in A's. presence and afterwards pasted the two pieces together and put the bill in circulation. The tearing of the bill was done in such a way, that the appearance of the bill was as consistent with its having been divided for the purpose of safe transmission by the post, as with its having been torn for the purpose of destroying it. Held: It being reserved for the court to draw inferences of fact—that A. was liable upon the bill

at the suit of a *bona fide* holder ·without notice. The following *quære* was proposed : "Whether the act of so reconstructing the bill amounted to forgery ?"

In *Raphael* v. *Bank of England*, 84 E. C. L. 160, it was held, that one, who takes a bank-note or other negotiable security *bona fide*, that is, giving value for it, and having no notice at the time, that the party, from whom he takes it, has no title, is entitled to recover upon it, even although he may at the time have had the means of knowledge of that fact, of which means he neglected to avail himself. In that case, the note sued on was a five hundred pound Bank of England note, which had been stolen.

In *Kinyon* v. *Wohlford*, 17 Minn. 239, it was held, that the fact, that there has been no delivery of a promissory note to any person by or on behalf of the maker, furnishes no defence to such note in the hands of a *bona fide* holder for value without notice, who has received the same before its maturity.

In *Orrick* v. *Colston*, 7 Gratt. 189, it was held, that a paper signed in blank and endorsed in blank may be filled up either as a common promissory note or a negotiable note ; and the person, who endorsed it in blank, will be liable on his endorsement to a holder for value.

In *McDonald* v. *Bank*, 27 Ia. 319, it was held, that, where a person entrusted by another with a paper signed in blank to be filled up as an order disregards the instruction and fills it up as a negotiable promissory note, the maker is liable thereon to a *bona fide* holder thereof, to whom it has been negotiated.

In *Rainbolt* v. *Eddy*, 34 Ia. 440, it was held, that the insertion by the payee in a blank left in the note of the words, "ten per cent. interest," did not affect the validity of the note in the hands of a *bona fide* endorser for value before maturity. The *onus* is upon the defendant to show, that such purchaser had notice of the facts at the time he received the note.

In *Yocum* v. *Smith*, 63 Ill. 321, the court held, that unpardonable negligence attaches to the maker of a promissory note containing blanks, which admit of being filled so as to increase the amount without room for suspicion, such note being evidently intended for circulation. The note was exe-

cuted for three hundred dollars, and the amount was changed to three hundred and twenty dolllars. I am unable to see here how any blank was left to be filled. It seems to me that the raising of the amount was a simple forgery and nothing else.

In *Garrard* v. *Haddan*, 67 Pa. St. 82, it appeared, that Garrard signed a printed note in the blank of which was written when signed, "one hundred" leaving a blank space between that and "dollars" which word was in print; this blank after delivery was filled with "fifty" in the same hand and there was nothing in the appearance to excite a suspicion, that it was not all right; it was held that Garrard was liable for the face of the note to a *bona fide* holder for value; that if the blank had been scored, or the alteration had in any way been perceptible, a purchaser would have taken it at his own risk; that if one, by his own acts or silence or negligence misleads another or effects a transaction, whereby an innocent party suffers, the blamable party must suffer the loss.

In *Abbott* v. *Rose*, 62 Me. 194, it was held, that a person delivering to another a paper bearing his signature with blanks unfilled therein, which he must necessarily expect will be filled to make it a complete instrument, gives implied authority to the person receiving it to fill the blanks; and if they are filled fraudulently, the maker will be liable thereon to a *bona fide* purchaser for value without notice; thus a person, who negligently delivers to another a blank note having the name of the payee and the words "or order" therein, intending that it shall be used for a specified purpose, will be liable thereon, if the blanks are wrongfully filled, and the note then transferred to a *bona fide* holder for value without notice of the fraud.

In *Griggs* v. *Howe*, 31 Barb. 100, it was held, where two drafts were drawn in blank as to the amount upon the defendants and accepted by them, payable to the order of W., the maker, with the express understanding that the sums to be inserted should not in the aggregate exceed one thousand dollars, and W. exceeded and disregarded this limitation of his authority and filled the blanks in the drafts with the sum of one thousand two hundred and fifty dollars each and negotiated the drafts to the plaintiffs before maturity, who paid

him the money upon them without notice that W. had exceeded his authority, that under the circumstances the plaintiffs were to be deemed *bona fide* holders for value, and that the commercial character of the paper would protect it, in their hands, from the defence that W. exceeded his authority; that the acceptees having themselves put it into W.'s power to do the wrong, they could not be allowed to shift the loss from themselves, and cast it upon a *bona fide* holder for value; that of the two they were the least innocent.

In *Kitchen* v. *Place*, 41 Barb. 465 it was held, that where a blank space is left in a promissory note after the word "at" in the place where the place of payment is usually mentioned, the holder of the note is authorized by an implied authority to fill the blank. The word "at" implies that the blank space which succeeds it may be filled before the note is delivered with a designated place of payment. And if the holder fills in a place of payment, it will not discharge the endorser.

In *Redlich* v. *Doll*, 54 N. Y. 234 it was held, that where one makes and delivers to another his promissory note perfect in form, except that a blank is left after the word "at" for the place of payment, it carries with it implied authority for any *bona fide* holder to fill the blank, and the insertion of a place of payment and negotiation of the note contrary to the agreement of the original parties does not avoid in the hands of a *bona fide* holder for value.

In *Nance* v. *Lary*, 5 Ala. 370, it appeared the defendant agreed to become a co-surety with Langford in a constable's bond; that he went to the store of Langford for the purpose of executing the bond, when the latter produced a sheet of paper for him to sign in blank, it being the intention of all the parties that the paper should be thus signed and the bond afterwards written out by a competent person. The defendant accordingly signed his name in blank, whereupon Langford suggested that the name was so far from the bottom of the paper that there might not be room for the bond to be written above it, and produced another sheet for defendant to sign so as to leave sufficient room for the intended bond. Langford with apparent carelessness, slipped the first sheet aside, and signed the other with the defendant, who carried

it to the clerk of the court to be filled up, leaving the former with Langford, under the impression that it had, or would be destroyed; subsequently Langford caused the note in controversy to be written over the blank signature of the defendant retained by him.   Collier, J., in delivering the opinion of the court said:  "The making of the note by Langford was not a mere fraud, it was something more.   It was quite as much a *forgery*, as if he had found the blank or purloined it from the defendant's possession.   If a recovery were allowed upon such a state of facts, then every one who ever indulges the idle habit of writing his name for mere pastime, or leaves a sufficient space between a letter and his subscription, might be made a bankrupt by having promised to pay money written over his signature."

In *Brown* v. *Reed*, 79 Pa. St., the contract signed by the defendant was as follows:

NORTH EAST, April 3, 1872.

"*Six months* after date I promise to pay J.B.Smith or   bearer *fifty dollars* when I sell by order TWO HUNDRED AND FIFTY DOLLARS   worth of hay and harvest grinders for value received, with legal interest, without   appeal    and    also    without defalcation or stay of execution.

T. H. BROWN,   Agt. for hay and harvest grinders.

The note that went into the hands of the *bona fide* holder, and on which suit was brought, was produced by cutting the said contract in two, between the words "or" and "bearer" in the first line, and the words "dollars" and "worth" in second line, and "without" and "appeal" in the third line, and "Brown" and "agent" in the signature in the last line, so it then read:

"NORTH EAST, April 3, 1872.

"Six months after date I promise to pay to J. B. Smith or order TWO HUNDRED AND FIFTY DOLLARS, for value received with legal interest, without defalcation or stay of execution.

"T. H. BROWN."

It was held, that the alteration was a forgery; and yet it was held, that the maker might have been so careless in signing such a contract that could be easily tampered with, that he still might be liable to a *bona fide* holder of the note.   It seems to me that it was a forgery by alteration and was void.

In *Zimmerman* v. *Rote*, 75 Pa. St. 188, a negotiable note on a printed blank was signed after there was written on the margin, that it was given for a patent, and not to be paid until a profit specified was paid. The condition was cut off and the note passed to a *bona fide* endorser for value, without notice. It was held in a suit by the holder that this was no defence by the maker. That the maker must guard the public against frauds and alterations by refusing to sign negotiable paper in such form as to admit of fraudulent practices with ease, and without ready detection.

In *Bank* v. *Clark*, 51 Ia. 264, a negotiable note for *ten* dollars was executed, and delivered with a blank preceding the amount; afterwards, before the *ten* was written "one hundred and," so as to become a note for one hundred and ten dollars, instead of for ten dollars; upon a review of the authorities it was held, that this was not the mere filling up of a blank but was a material alteration, and no recovery could be had by the *bona fide* holder for value without notice. But in nearly all the cases I have cited, the notes were signed by the maker, with the intent to sign negotiable paper, and knowing at the time it was signed that it was such paper, that the mind of the signer accompanied the signature. But it is insisted here, that where the maker was by fraud practiced upon him induced to sign a note which he did not intend to sign, and never intended to sign—that where he did not intend to put his name to any instrument which then was or thereafter might become negotiable,—that where he was deceived not merely as to the legal effect, but as to the *actual contents* of the instrument, no recovery can be had against him, even by a *bona fide* holder for value of such paper without notice of such fraud; and the following cases are cited to sustain the proposition: *Putnam* v. *Sullivan*, 4 Mass. 45; *Foster* v. *Mackinnon*, 4 C. P. 704; *Whitney* v. *Snyder*, 2 Lan. N. Y. 477; *Gibbs* v. *Linabury*, 22 Mich. 479; *Anderson* v. *Walter*, 34 Mich. 113; *Walker* v. *Ebert*, 29 Wis. 194; *Kellogg* v. *Steiner*, 29 Wis. 626; *Butler* v. *Carns*, 37 Wis. 61; *Griffiths* v. *Kellogg*, 39 Wis. 290; *Taylor* v. *Atchison*, 54 Ill. 196; *Briggs* v. *Ewart*, 51 Mo. 245; *Cline* v. *Guthrie*, 42 Ind. 227; *DeCamp* v. *Hamma*, 29 Ohio St. 467; *Winchell* v. *Crider*, 29 Ohio St. 480; *Woods* v. *Hynes*, 1 Scam. 103; *Bank* v. *Morehead*, 5 W. Va. 74.

Most of the authorities above cited fully sustain the principle contended for by counsel for defendant in error. It is remarkable that the notes executed in almost all of the said cases were for patent rights, and still more remarkable, that in nearly every case the same fraud was perpetrated, as is set up in the pleas in this case. To prevent such a defence against a recovery on a negotiable note by a *bona fide* holder thereof without notice of such fraud, is of very recent date.

In *Putnam* v. *Sullivan*, 4 Mass. 45, which was a very hard case on the endorser in blank of the note, when by false pretenses one of such endorsements was obtained and put in circulation after being filled up, the court held, that such fraudulent use was not a forgery, nor would such fraud discharge the endorser against the endorsee. In that case Parsons, C. J., by a mere *dictum*, if it amounts to that, has done much injury to well established principles of commercial law. He said, p. 54, "The counsel for the defendants agree, that generally an endorsement obtained by fraud shall hold the endorser according to the terms of it; but they make a distinction, between the cases, where the endorser through fraudulent pretenses has been induced to endorse the note he is called on to pay, and where he never intended to endorse a note of that description, but a different note and for a different purpose. *Perhaps* there may be cases, in which this distinction ought to prevail. As if a blind man had a note falsely and fraudulently read to him, and he endorsed it supposing it to be the note read to him. But we are satisfied that an endorser cannot avail himself of this distinction, but in cases where he is not chargeable with any laches or neglect or misplaced confidence in others."

In *Foster* v. *Mackinnon*, 4 C. P. *supra*, decided in 1869, an endorser of a bill of exchange for three thousand pounds sterling was discharged on proof of fraud which induced him to believe that he was signing a guarantee, when he did not even look at the face of the paper. Byles, J., who delivered the opinion of the court, cited a number of cases where grantors of deeds were released on the ground of fraud, but says, "We are not aware of any case in which the precise question now before us has arisen on bills of exchange or promissory notes or been judicially discussed." He cites with appro-

bation, the distinction made by Chief Justice Parsons in *Putnam* v. *Sullivan*, 4 Mass. *supra*, treating it as a decision, when it can scarcely be called a *dictum*, as he does not for himself express any decided opinion.   This case of *Foster* v. *Mackinnon*, is relied on as authority in all the cases, which hold that fraud will discharge the maker as against the *bona fide* holder of the paper.   The doctrine contended for seems to have no better foundation than a mere "perhaps" of a distinguished American jurist, and an English decision, which says "that the principle applicable to fraudulent deeds applies to other contracts including negotiable paper," leaving out of view entirely that rule so often laid down by the law merchant even conceding the maker of the note innocent, "that where one of the innocent parties must suffer, he, by whose act the loss occurred, must bear it."

It will be seen that in a long list of cases cited from Indiana, in which the same fraud was perpetrated as here, the court has adhered to the old rule.   And in *Ruddell* v. *Fhalor*, 72 Ind. 533, the court held, that "an endorsee for value before maturity and without notice of a promissory note, negotiable by the law merchant, takes it free from all equities and defences existing between the maker and payer thereof." The answer there filed raised substantially the same defence, as is contained in the first plea filed in this case, and the whole court by Hawk J. said:   "These facts were not sufficient to constitute a valid defence in appellee's favor to the suit of appellant on said note as the endorsee thereof."

In Illinois there is a statute, which declares the maker may be discharged even against a *bona fide* holder of negotiable paper, "if any fraud or circumvention be used in obtaining the making or executing any instrument."   *Woods* v. *Hynes*, 1 Scam. 105.

In *Taylor* v. *Atchison*, 54 Ill. 196, cited by counsel for defendant in error, Walker J., who delivered the opinion of the court, said after speaking of the fraud practiced by the patent venders upon the maker of the note:   "At common law a person, who was thus imposed upon in the execution of a negotiable instrument, could interpose the fraud as a defence only against the payee; and it was manifestly the design of the General Assembly, to alter the common law, so as

to permit the defence to be made in cases, where it could not at common law."

In *Douglass* v. *Matting*, 29 Ia. 488, a fraud was committed on the maker of a negotiable note by a patent right man, which fraud was much like the one set up in the first plea in this case. Beck J. for the court said : "It will be observed that the answer substantially admits the execution of the note, but as a defence, alleged that defendant's signature was obtained thereto by fraudulent misrepresentations of the agent of the payee ; that the defendant relying upon the representations of the agent, to the effect that the paper was a contract of the character described signed his name thereto. Of these facts it is not averred that the plaintiff had notice when the note was endorsed to him. We are required to determine whether the answer presents a sufficient defence. It is conceded that if the transaction of the agent of the payee in procuring the signature of defendant amounted to less than a forgery the defence is not sufficient as against a *bona fide* holder receiving it for value before due. Plaintiff must be regarded as such holder under the pleadings. We must determine then whether the note according to the averments of the answer is in law a forgery. In our opinion upon principle it is not. The defendant entrusted the one with whom he was dealing with the preparation of the instrument. The instrument as prepared was not what defendant agreed to sign, but was voluntarily executed by him. The act of the agent was a fraud whereby defendant was induced to make the note, and not the false making of it, which is necessary to constitute forgery."

I have quoted thus much because, it clearly and concisely states what I believe the law to be, and I approve it.

In *Bank* v. *Smith*, 55 N. H. 593 the plaintiff was the *bona fide* holder of a negotiable note ; the defendant "did not contract to give any note nor know nor have any suspicion that it was a note he was signing, but was fraudulently induced by the payee to sign it under the pretense that by it he was to become agent of a patent hay fork, &c." The court held defendant liable. Ladd J., seemed to be impressed with the case of *Foster* v. *Mackinnon*, *supra*, but the other two judges said nothing about that doctrine, but based their opinion on

the doctrine, that "when one of the innocent parties must suffer by the act of a third, he who has enabled such third person to occasion the loss must sustain it." In a similar case, where a man signed a negotiable note thinking it was a different paper, induced to do so by fraud by a patent vender, the court held, that he was liable to a *bona fide* holder thereof. *Abbott* v. *Rose*, 62 Me. 194.

The case of *Bank* v. *Morehead*, 5 W. Va. 74, is cited by counsel for defendant in error. In that case, as the statement showed, the note was a printed form down to and including the words " payable at," after which words there was a blank. Morehead signed the note. It was afterwards taken to the bank by Wilkins, the payee, who had inserted in the blank, after the words " payable at" " Second National Bank, Parkersburg, W. Va.." Morehead testified, that he refused to sign a negotiable note, and that it was without his knowledge and consent made negotiable by the addition of those words. The court below held, that he was liable to the *bona fide* holder for value, without notice. Upon a writ of error this Court reversed the judgment, holding, that by filling the blank there was a material alteration in the note. There is neither reason nor authority to sustain this decision. The authorities are all the other way, a number of which I have before cited. We cannot approve this decision, which overrules *Orrick* v. *Colster*, 7 Gratt. *supra*, and is against the whole current of both English and American authority.

Mr. Daniel in his work on Negotiable Instruments, section 850, says: "It is generally agreed that if the party is guilty of any negligence in signing the paper, he is bound; and the act itself it seems to us can hardly be committed without negligence." In a case like that at bar the question of negligence is not a subject of enquiry. If the party signed the note, if it was his genuine signature, and he intended to sign *a* paper and by artifice and fraud was induced to sign a paper he did not intend to sign, and did *in fact* sign a negotiable promissory note, which was afterwards purchased for value before maturity without notice of any such fraud in its procurement, he is bound to such innocent holder, and the well established rule applies with striking force in such a case, even if it could be said, that the maker was entirely without fault in

signing the note, "When one of two innocent parties must suffer by the act of a third, he, who by his act has enabled such third person to cause the loss, must sustain it." We think we may safely lay down this general rule, that, when a purchaser of a negotiable promissory note takes it for value before maturity without notice of any fraud in its execution, unless at the time it was so purchased by him, it was absolutely void, he will recover on such note against the maker, although the maker was induced by fraud to sign it, not intending to sign such note, but a paper of an entirely different character, and in such case the question of negligence in the maker forms no legitimate subject of enquiry.

This rule is absolutely necessary to the protection of innocent holders of commercial paper. And the interest of the whole country demands, that the rule be strictly adhered to. It is much better to suffer a few individuals to be defrauded out of their property, than to relax this salutary rule, and let the whole country suffer. It is feared that some courts, in their earnest desire to protect the citizen from the frauds of venders of patents, have unwittingly struck the law-merchant a fearful blow, and at the same time visited the sin of the defrauder upon the innocent holders of the very paper, which by their trust and overweening confidence in these same dishonest adventurers they have placed upon the market.

The pleas did not deny, that the plaintiff purchased the note in suit for value before maturity and without knowledge of any fraud in the procurement of the note. The said pleas raised no defence as against the *bona fide* holder of the note and were improperly filed and should have been rejected. Whether the second plea would have been good, if the defence would avail, that is, whether a general plea of fraud without setting forth the acts, which constitute the fraud, would be good, we do not in this case decide.

The judgment of the circuit court is reversed, with costs; and this Court proceeding to render such judgment as the circuit court should have rendered, the verdict of the jury is set aside and a new trial granted, and the said special pleas marked Nos. 1 and 2 are rejected, and the case remanded for a new trial.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CASE REMANDED.